**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | : Master File No. 12-md-02311 <br> : Judge Marianne O. Battani <br> : Magistrate Judge Mona K. Majzoub <br> : <br> : |
| IN RE ANTI-VIBRATION RUBBER PARTS <br> IN RE AUTOMOTIVE HOSES | : Case No. 2:13-cv-00803 <br> : Case No. 2:15-cv-12893 <br> : <br> : <br> : <br> : |
| THIS DOCUMENT RELATES TO <br><br> End-Payor Actions | : <br> : <br> : <br> : <br> : <br> : <br> : |

**MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT
WITH DEFENDANT SUMITOMO RIKO AND
<u>PROVISIONAL CERTIFICATION OF SETTLEMENT CLASSES</u>**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that as soon as this motion may be heard before Hon. Marianne O. Battani, End-Payor Plaintiffs ("EPPs") will and do hereby respectfully move the Court for an order preliminarily approving a proposed settlement between the End-Payor Plaintiffs and Sumitomo Riko Co. Ltd. and DTR Industries, Inc. (together, "SUMITOMO RIKO") in the amount of US$11,400,000.00, and provisional certification of the proposed Settlement Classes in the above-entitled actions.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, all filings in this litigation, and such other argument as may be presented to the Court.

Date:  September 7, 2016                    Respectfully submitted,

                                           */s/ Steven N. Williams*
                                           Steven N. Williams
                                           Demetrius Lambrinos
                                           Elizabeth Tran
                                           Joyce Chang
                                           **COTCHETT, PITRE & McCARTHY, LLP**
                                           San Francisco Airport Office Center
                                           840 Malcolm Road, Suite 200
                                           Burlingame, CA 94010
                                           Telephone: (650) 697-6000
                                           Facsimile: (650) 697-0577
                                           swilliams@cpmlegal.com
                                           dlambrinos@cpmlegal.com
                                           etran@cpmlegal.com
                                           jchang@cpmlegal.com


                                           */s/ Hollis Salzman*
                                           Hollis Salzman
                                           Bernard Persky
                                           William V. Reiss
                                           **ROBINS KAPLAN LLP**
                                           601 Lexington Avenue, Suite 3400
                                           New York, NY 10022
                                           Telephone: (212) 980-7400
                                           Facsimile: (212) 980-7499
                                           HSalzman@RobinsKaplan.com
                                           BPersky@RobinsKaplan.com
                                           WReiss@RobinsKaplan.com


                                           */s/ Marc M. Seltzer*
                                           Marc M. Seltzer
                                           Steven G. Sklaver
                                           **SUSMAN GODFREY L.L.P.**
                                           1901 Avenue of the Stars, Suite 950

Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Omar Ochoa
**SUSMAN GODFREY L.L.P.**
901 Main Street, Suite 5100
Dallas, TX 75202
Telephone: (214) 754-1900
Facsimile: (214)754-1933
toxford@susmangodfrey.com
oochoa@susmangodfrey.com

*Interim Co-Lead Class Counsel for the Proposed*
*End-Payor Plaintiff Classes*

E. Powell Miller
Devon P. Allard
**THE MILLER LAW FIRM, P.C**.
The Miller Law Firm, P.C.
950 W. University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
Facsimile: (248) 841-2200
epm@millerlawpc.com
dpa@millerlawpc.com

*Interim Liaison Class Counsel for the Proposed*
*End-Payor Plaintiff Classes*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | : <br> : <br> : <br> : <br> : | Master File No. 12-md-02311 <br> Judge Marianne O. Battani <br> Magistrate Judge Mona K. Majzoub |
| IN RE ANTI-VIBRATION RUBBER PARTS <br> IN RE AUTOMOTIVE HOSES | : <br> : <br> : <br> : | Case No. 2:13-cv-00803 <br> Case No. 2:15-cv-03203 |
| THIS DOCUMENT RELATES TO <br><br> End-Payor Actions | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | |

**MEMORANDUM OF LAW IN SUPPORT OF END-PAYOR PLAINTIFFS'
MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT
WITH DEFENDANT SUMITOMO RIKO AND
<u>PROVISIONAL CERTIFICATION OF SETTLEMENT CLASSES</u>**

<u>**STATEMENT OF ISSUES PRESENTED**</u>

1. Whether End-Payor Plaintiffs' ("EPPs") settlement with Defendants Sumitomo Riko Co. Ltd. and DTR Industries, Inc. (together, "SUMITOMO RIKO"), embodied in the Settlement Agreement entered into on July 30, 2016 ("Settlement Agreement") as amended on August 18, 2016 and attached hereto as Exhibit 1, is fair, reasonable, and adequate, and should be preliminarily approved;

2. Whether the Court should provisionally certify the Settlement Classes under Federal Rule of Civil Procedure ("Rule") 23(a) and (b)(3);

3. Whether the Court should stay the proceedings by the EPPs against Defendant SUMITOMO RIKO in accordance with the terms of the Settlement Agreement; and

4. Whether the Court should appoint Interim Co-Lead Class Counsel for the EPPs as Settlement Class Counsel for this settlement. [1]

---

[1] Unless otherwise defined, capitalized terms shall have the meaning ascribed to them in the Settlement Agreement.

i

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

Fed. R. Civ. P. 23

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184 (2013)

*Cason-Merenda v. VHS of Mich., Inc.*, 2013 U.S. Dist. LEXIS 131006 (E.D. Mich. Sept. 13, 2013)

*Griffin v. Flagstar Bancorp, Inc.*, 2013 U.S. Dist. LEXIS 173702 (E.D. Mich. Dec. 12, 2013)

*In re Am. Med. Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996)

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003)

*In re Corrugated Container Antitrust Litig.,* 1981 WL 2093 (S.D. Tex. Jan. 27, 1981)

*In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393 (S.D. Ohio 2007)

*In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631 (E.D. Pa. 2003)

*In re Packaged Ice Antitrust Litig.*, 2011 U.S. Dist. LEXIS 17255 (E.D. Mich. Feb. 22, 2011)

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517 (6th Cir. 2008)

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838 (6th Cir. 2013)

*IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583 (E.D. Mich. 2006)

*Sheick v. Auto Component Carrier LCC*, 2010 U.S. Dist. LEXIS 110411 (E.D. Mich. Oct. 18, 2010)

## <u>TABLE OF CONTENTS</u>

Page

PRELIMINARY STATEMENT ................................................................. 1

THE BASIC TERMS AND BACKGROUND OF THE SETTLEMENT AGREEMENT .......... 4

ARGUMENT ............................................................................................ 9

I.    Preliminary Approval Should be Granted Because the Proposed Settlement Falls Well Within the Range of Possible Approval. ............................................. 9

    A.    The Settlement Agreement Achieves an Excellent Result for the Proposed Settlement Classes, Particularly Given the Expense, Duration, and Uncertainty of Continued Litigation. ..................................................... 12

    B.    The Settlement Agreement is the Result of Thorough Arm's-Length Negotiations Conducted By Highly Experienced Counsel. ............................... 16

II.    The Proposed Settlement Classes Should Be Provisionally Certified Pursuant to Rule 23. .......................................................................................... 17

    A.    The Proposed Settlement Classes Meet the Requirements of Rule 23(a). ........... 18

        i.    The Proposed Settlement Classes Are So Numerous That It Is Impracticable to Bring All Class Members Before the Court ..................... 19

        ii.    End-Payor Plaintiff Class Representatives and the Proposed Settlement Classes Share Common Legal and Factual Questions. ............................... 20

        iii.    End-Payor Plaintiff Class Representatives' Claims Are Typical of the Claims of the Members of the Proposed Settlement Classes. ..................... 21

        iv.    Proposed Settlement Class Counsel and End-Payor Plaintiff Class Representatives Will Fairly and Adequately Protect the Interests of the Proposed Settlement Classes. ........................................................ 22

    B.    The Proposed Settlement Classes Meet the Requirements of Rule 23(b)(3). ........ 24

        i.    Common Questions of Law and Fact Predominate. ................................ 24

        ii.    A Class Action is the Superior Method to Adjudicate These Claims. .......... 26

III.    Notice to the Class Members. ................................................................ 27

CONCLUSION ........................................................................................ 28

iii

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Agretti v. ANR Freight Sys., Inc.*,
  982 F.2d 242 (7th Cir. 1992) ................................................................. 9

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ......................................................... 24, 25, 27

*Amgen Inc. v. Conn. Retirement Plans & Trust Funds*,
  133 S.Ct. 1184 (2013) ..................................................... 18, 25

*Bacon v. Honda of America Mfg., Inc.*,
  370 F.3d 565 (6th Cir. 2004) ................................................ 19

*Blades v. Monsanto Co.*,
  400 F.3d 562 (8th Cir. 2005) ................................................ 25

*Bobbitt v. Acad. of Reporting*,
  2009 WL 2168833 (E.D. Mich. Jul. 21, 2009) ......................... 10

*Bowers v. Windstream Ky. East, LLC*,
  Civil Action No. 3:09-CV-440-H, 2013 U.S. Dist. LEXIS 157242
  (W.D. Ky. Nov. 1, 2013) ................................................... 17

*Cason-Merenda v. VHS of Mich., Inc.*,
  Case No. 06-15601, 2013 U.S. Dist. LEXIS 131006
  (E.D. Mich. Sept. 13, 2013) ......................................... 18, 20, 22, 25

*Clark Equip. Co. v Int'l Union of Allied Industrial Workers of Am.*,
  803 F.2d 878 (6th Cir. 1986) ............................................ 10

*Cordes & Co. Financial Services, Inc. v. A.G. Edwards & Sons, Inc.*,
  502 F.3d 91 (2d Cir. 2007) ............................................... 25

*Date v. Sony Elecs., Inc.*,
  Case No. 07-15474, 2013 U.S. Dist. LEXIS 108095
  (E.D. Mich. July 31, 2013) .............................................. 20

*Dillworth v. Case Farms Processing, Inc.*,
  No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446
  (N.D. Ohio Mar. 8, 2010) ................................................ 27

*Fidel v. Farley*,
   534 F.3d 508 (6th Cir. 2008)............................................................................. 28

*Gautreaux v. Pierce*,
   690 F.2d 616 (7th Cir. 1982)............................................................................. 11

*Golden v. City of Columbus*,
   404 F.3d 950 (6th Cir. 2005)............................................................................. 19

*Griffin v. Flagstar Bancorp, Inc.*,
   Case No. 2:10-cv-10610, 2013 U.S. Dist. LEXIS 173702
   (E.D. Mich. Dec. 12, 2013) ......................................................... 9, 17, 20, 22

*Hyland v. Homeservices of Am., Inc.*,
   Case No. 3:05-CV-612-R, 2008 U.S. Dist. LEXIS 90892
   (W.D. Ky. Nov. 6, 2008)................................................................................... 19

*In re Aluminum Phosphide Antitrust Litig.*,
   160 F.R.D. 609 (D. Kan. 1995).......................................................................... 20

*In re Am. Med. Sys., Inc.*,
   75 F.3d 1069 (6th Cir. 1996)........................................................................ 19, 22

*In re Ampicillin Antitrust Litig.*,
   82 F.R.D. 652 (D.D.C. 1979)............................................................................. 16

*In re Blood Reagents Antitrust Litig.*,
   283 F.R.D. 222 (E.D. Pa. 2012)......................................................................... 25

*In re Cardizem CD Antitrust Litig.*,
   218 F.R.D. 508 (E.D. Mich. 2003)............................................................. passim

*In re Chambers Dev. Sec. Litig.*,
   912 F. Supp. 822 (W.D. Pa. 1995) ................................................................... 13

*In re Corrugated Container Antitrust Litig.*,
   1981 WL 2093 (S.D. Tex. Jan. 27, 1981) ................................................... 14, 15

*In re Corrugated Container Antitrust Litig.*,
   643 F.2d 195, 208 (5th Cir. 1981)..................................................................... 23

*In re Delphi Corp. Sec. Derivatives & ERISA Litig.*,
   248 F.R.D. 483 (E.D. Mich. 2008)..................................................................... 17

*In re Dun & Bradstreet Credit Servs. Customer Litig.*,
   130 F.R.D. 366 (S.D. Ohio 1990) ..................................................................... 16

v

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
   No. M 02-1486 PJH, 2006 U.S. Dist. LEXIS 39841
   (N.D. Cal. June 5, 2006) .................................................................................. 20

*In re Farmers Ins. Exchange, Claims Representatives' Overtime Pay Litig.*,
   481 F.3d 1119 (9th Cir. 2007) ......................................................................... 13

*In re Foundry Resins Antitrust Litig.*,
   242 F.R.D. 393 (S.D. Ohio 2007) ............................................................. passim

*In re Linerboard Antitrust Litig.*,
   292 F. Supp. 2d 631 (E.D. Pa. 2003) ......................................................... 14, 15

*In re Linerboard Antitrust Litig.*,
   321 F. Supp. 2d 619 (E.D. Pa. 2004) ................................................................ 15

*In re Packaged Ice Antitrust Litig.*,
   Case No. 08-MD-01952, 2011 U.S. Dist. LEXIS 17255
   (E.D. Mich. Feb. 22, 2011) ....................................................................... passim

*In re Packaged Ice Antitrust Litig.*,
   No. 08-MD-01952, 2010 WL 3070161 (E.D. Mich. Aug. 2, 2010) ......................... 11

*In re Potash Antitrust Litig.*,
   159 F.R.D. 682 (D. Minn. 1995) ....................................................................... 24

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
   584 F. Supp. 2d 697 (M.D. Pa. 2008) ............................................................... 15

*In re Rent-Way Sec. Litig.*,
   305 F.Supp.2d 491 (W.D. Pa. 2003) ................................................................. 13

*In re Scrap Metal Antitrust Litig.*,
   527 F.3d 517 (6th Cir. 2008) ............................................................... 24, 25, 26

*In re Southeastern Milk Antitrust Litig.*,
   Master File No. 2:09-MD-1000, 2010 U.S. Dist. LEXIS 94223
   (E.D. Tenn. Sept. 7, 2010) .............................................................................. 19

*In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*,
   Case No. 1:01-CV-9000, 2001 U.S. Dist. LEXIS 26714
   (E.D. Ohio Oct. 19, 2001) ............................................................................... 11

*In re Universal Serv. Fund Tel. Billing Practices Litig.*,
   219 F.R.D. 661 (D. Kan. 2004) ........................................................................ 27

*In re Uranium Antitrust Litig.*,
    617 F.2d 1248 (7th Cir. 1980) ................................................................ 16

*In re Urethane Antitrust Litig.*,
    251 F.R.D. 629 (D. Kan. 2008) ............................................................... 26

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001) ................................................................... 25

*In re Vitamins Antitrust Litig.*,
    209 F.R.D. 251 (D.D.C. 2002) ................................................................ 25

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) ................................................................... 13

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
    722 F.3d 838 (6th Cir. 2013) ............................................. 18, 20, 24, 26

*Int'l Union, UAW v. Ford Motor Co.*,
    Case Nos. 05-74730, 06-10331, 2006 U.S. Dist. LEXIS 70471
    (E.D. Mich. July 13, 2006) ............................................................... 10, 21

*IUE-CWA v. Gen. Motors Corp.*,
    238 F.R.D. 583 (E.D. Mich. 2006) ..................................................... 9, 16

*Karkoukli's, Inc. v. Dohany*,
    409 F.3d 279 (6th Cir. 2005) ................................................................. 28

*Leonhardt v. ArvinMeritor, Inc.*,
    581 F. Supp. 2d 818 (E.D. Mich. 2008) ................................................ 17

*Marcus v. Dep't of Revenue*,
    206 F.R.D. 509 (D. Kan. 2002) ............................................................... 23

*Miller v. Univ. of Cincinnati*,
    241 F.R.D. 285 (S.D. Ohio 2006) ........................................................... 19

*Powers v. Hamilton Cnty. Public Defender Comm.*,
    501 F.3d 595 (6th Cir. 2007) ................................................................. 25

*Rankin v. Rots*,
    No. 02-cv-71045, 2006 U.S. Dist. LEXIS 45706
    (E.D. Mich. June 28, 2006) ................................................................... 11

*Reed v. Advocate Health Care*,
    268 F.R.D. 573 (N.D. Ill. 2009) ............................................................. 26

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) .................................................................. 13

*Senter v. Gen. Motors Corp.*,
532 F.2d 511 (6th Cir. 1976) ....................................................................... 23

*Sheick v. Auto Component Carrier LCC*,
Case No. 2:09-cv-14429, 2010 U.S. Dist. LEXIS 110411
(E.D. Mich. Oct. 18, 2010) ...................................................................... 16

*Stout v. J.D. Byrider*,
228 F.3d 709 (6th Cir. 2000) ....................................................................... 22

*Thacker v. Chesapeake Appalachia, L.L.C.*,
259 F.R.D. 262 (E.D. Ky. 2009) ........................................................... 16, 28

*UAW v. Gen. Motors. Corp.*,
497 F.3d 615 (6th Cir. 2007) ......................................................................... 9

*Wal-Mart Stores, Inc. v. Dukes*,
131 S.Ct. 2541 (2011) ................................................................................. 18

**Other Authorities**

CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE
§ 1522, at 225-26 (2d ed. 1990) ................................................................. 10

HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS (4th ed. 2005)

§ 11.41 ....................................................................................................... 11

§ 3:10 ......................................................................................................... 20

NEWBERG ON CLASS ACTIONS (3d ed. 1992)

§ 18.28 ....................................................................................................... 25

MANUAL FOR COMPLEX LITIGATION (FOURTH) (2004)

§ 13.12 (2004) ............................................................................................ 10

§ 21.32 ....................................................................................................... 17

§ 21.63 ....................................................................................................... 10

MANUAL FOR COMPLEX LITIGATION (SECOND) (1986)

§ 30.46 ............................................................................................................... 10

MANUAL FOR COMPLEX LITIGATION (THIRD) (3d ed. 1995)

§ 30.41............................................................................................... 10, 11, 17

**Rules**

Federal Rules of Civil Procedure

Rule 23 .............................................................................................................. 18

Rule 23(a) ............................................................................... 18, 21, 22, 24

Rule 23(a)(1) ..................................................................................................... 19

Rule 23(a)(2) ............................................................................................... 20, 21

Rule 23(a)(3) ............................................................................................... 21, 22

Rule 23(a)(4) ..................................................................................................... 22

Rule 23(b) ........................................................................................................... 18

Rule 23(b)(3)(D) ............................................................................................... 27

Rule 23(b)(3).......................................................................................... 24, 26, 27

Rule 23(c)(2)(B) ................................................................................................ 27

Rule 23(e)(1) ..................................................................................................... 28

Rule 23(g).......................................................................................................... 23

The End-Payor Plaintiffs ("EPPs"), on behalf of themselves and all others similarly situated, by and through the undersigned Interim Co-Lead Class Counsel, respectfully submit this memorandum in support of their motion seeking preliminary approval of a settlement with SUMITOMO RIKO as defined below, and provisional certification of the proposed Settlement Classes in the above-entitled actions.

## PRELIMINARY STATEMENT

Anti-Vibration Rubber Parts and Automotive Hoses are among the parts at issue in these coordinated multi-district proceedings, *In re Automotive Parts Antitrust Litigation* ("Auto Parts"), MDL No. 2311. For the purpose of the proposed settlement, the automotive parts that are the subject of the above-entitled actions are defined as follows:

 "**Anti-Vibration Rubber Parts**" has the meaning of that term as used in Paragraph 3 of the First Consolidated Amended Class Action Complaint, Case No. 2:13-cv-00803-MOB-MKM (June 13, 2014), ECF No. 20.

The Anti-Vibration Rubber Parts Defendants include: Yamashita Rubber Co., Ltd., YUSA Corporation, Tokai Rubber Industries, Ltd., DTR Industries, Inc., Bridgestone Corporation, Bridgestone APM Company, Toyo Tire & Rubber Co., Ltd., Toyo Tire North America OE Sales LLC, and Toyo Automotive Parts (USA), Inc.

"**Automotive Hoses**" has the meaning of that term as used in Paragraph 2 of the Class Action Complaint for Damages and Injunctive Relief, Case No. 2:15-cv-12893-MOB-MKM (August 14, 2015) ECF No. 1.

The Automotive Hoses Defendants include: Toyoda Gosei Co., Ltd., Toyoda Gosei North America Corporation, TG Kentucky, LLC, TG Fluid Systems USA Corporation (together "Toyoda

1

Gosei"); and Sumitomo Riko Company Limited (f/k/a Tokai Rubber Industries, Ltd.), DTR Industries, Inc. (together "SUMITOMO RIKO").

These actions arise from alleged conspiracies by and among the above-identified defendant companies to fix prices, rig bids, and allocate the market and customers in the United States for the sale of Anti-Vibration Rubber Parts and Automotive Hoses.

EPPs filed the first class action complaints involving Anti-Vibration Rubber Parts and Automotive Hoses (collectively, the "Complaints") against the foregoing Defendants between February 27, 2013 and August 14, 2015. The Court also appointed the undersigned firms as Interim Co-Lead Class Counsel and Interim Liaison Counsel for the End-Payor Actions in the Master Docket for MDL No. 2311. *See id., citing* Master File No. 2:12-md-2311, Case No. 2:12-cv-00100 (Aug. 7, 2012, ECF No. 271). From the inception of these cases, Interim Co-Lead Class Counsel have represented the interests of the classes of EPPs, including overseeing and directing the prosecution and settlement of the claims brought against SUMITOMO RIKO. This proposed settlement is a result of those efforts.

EPPs allege that, in furtherance of the alleged conspiracies, Defendants agreed, during meetings and conversations, to unlawfully fix, artificially raise, maintain and/or stabilize prices, rig bids for, and allocate the supply of Anti-Vibration Rubber Parts and Automotive Hoses and then sold those products at supracompetitive prices to automobile manufacturers in the United States and elsewhere. *See, e.g.,* EPPs' Consolidated Amended Class Action Complaint in *In re Anti-Vibrational Rubber Parts* at ¶¶ 1, 119.

The settlement between the EPPs and SUMITOMO RIKO is meaningful and substantial and will result in a payment of US$11,400,000.00 for the benefit of the EPP Classes, a very significant achievement in this litigation. US$10,283,916.10 will be allocated to the *Anti-Vibration*

2

*Rubber Parts* case, and US$1,116,083.90.00 will be allocated to the *Automotive Hoses* case. Standing alone, the monetary recovery from SUMITOMO RIKO is remarkable, but the settlement is also valuable to the EPPs in that it requires SUMITOMO RIKO to provide comprehensive discovery cooperation in the form of, *inter alia*, attorney proffers, and the production of certain documents (including transactional data), related to the claims asserted in these cases. In addition, SUMITOMO RIKO has agreed to refrain from conduct that constitutes a *per se* violation of Section 1 of the Sherman Act (whether characterized as price-fixing, market allocation, bid-rigging, or otherwise) for a period of 24 months from the date of the entry of final judgment in connection with its sales of Anti-Vibration Rubber Parts and Automotive Hoses. *See* Settlement Agreement ¶ 32. The ability to obtain such assistance without protracted and expensive discovery is extremely valuable to the EPPs. SUMITOMO RIKO's cooperation agreement will greatly enhance the EPPs' ability to prosecute their claims against the remaining non-settling Defendants.

It should also be noted that in the *Anti-Vibration Rubber Parts* case and the *Automotive Hoses* case, SUMITOMO RIKO is the amnesty applicant, and thus would be able to claim that it is only subject to non-trebled damages based on its own sales rather than joint and several liability and trebled damages. This fact reduces the potential recovery against SUMITOMO RIKO should EPPs proceed to trial against SUMITOMO RIKO in the *Anti-Vibration Rubber Parts* case or the *Automotive Hoses* case.

Additionally, SUMITOMO RIKO's sales will remain in the case for purposes of computing the treble damages claim against the non-settling Defendants in accordance with governing law and shall be part of any joint and several liability claims against other current or future defendants. *See* Settlement Agreement ¶ 62. The EPPs and the members of the proposed Settlement Classes will retain their ability to recover from the remaining Defendants the entire amount of damages

caused by the alleged conspiracies, even those attributable to SUMITOMO RIKO, less only the amount paid by SUMITOMO RIKO in settlement.

EPPs and their Interim Co-Lead Class Counsel believe, for all the reasons set forth, that the settlement with SUMITOMO RIKO is in the best interest of the proposed Settlement Classes and merits the Court's preliminary approval. EPPs therefore request the entry of an Order:

1. Preliminarily approving the settlement;

2. Provisionally certifying the proposed Settlement Classes;

3. Staying the proceedings against SUMITOMO RIKO in accordance with the terms of the Settlement Agreement; and

4. Appointing Interim Co-Lead Class counsel for EPPs as Settlement Class Counsel for this settlement.

## THE BASIC TERMS AND BACKGROUND OF THE SETTLEMENT AGREEMENT

The Settlement Agreement with SUMITOMO RIKO arises from extensive arm's length and good faith negotiations. The EPPs' counsel participated in intensive fact-gathering sessions and informational meetings, as well as extensive negotiations that took place over the course of a year through telephone calls, in-person meetings – including in Japan – and other communications.

**Settlement Classes**: The Settlement Agreement defines the Settlement Classes in the Complaints as follows:

(a)     "AVRP Settlement Class" is defined as:

All persons and entities that, from March 1, 1996 through the Execution Date, purchased or leased a new Vehicle in the United States not for resale which included one or more Anti-Vibration Rubber Parts as a component part, or indirectly purchased one or more Anti-Vibration Rubber Parts as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Anti-Vibration Rubber Parts directly or for resale.

(b)     "Automotive Hoses Settlement Class" is defined as:

All persons and entities that, from May 2003 through the Execution Date, purchased or leased a new Vehicle in the United States not for resale which included one or more Automotive Hoses as a component part, or indirectly purchased one or more Automotive Hoses as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant.  Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Automotive Hoses directly or for resale.

*See* Addendum to Settlement Agreement.

"**Vehicle**," as used in these class definitions, is limited to four-wheeled passenger automobiles, vans, sports utility vehicles, crossovers, and pick-up trucks.

**Settlement Amount**: SUMITOMO RIKO has agreed to pay US$11,400,000.00 by wiring such funds to one or more escrow accounts ("Escrow Account(s)") established at Wells Fargo & Company within thirty (30) days following entry of an order preliminarily approving this Agreement by the Court. *Id.* ¶¶ 23, 24.

**Cooperation**: In addition to paying the Settlement Amount and agreeing to refrain from conduct that constitutes a *per se* violation of Section 1 of the Sherman Act in connection with the sale of Anti-Vibration Rubber Parts or Automotive Hoses for a period of 24 months from the date of the entry of final judgment, SUMITOMO RIKO agreed to provide extensive cooperation to the EPPs that will significantly aid in their prosecution of claims against the remaining Defendants. A general summary of SUMITOMO RIKO's cooperation obligations is provided below. The terms of this cooperation agreement are set forth in fuller detail in Section K (¶¶ 44-54) of the Settlement Agreement.  SUMITOMO RIKO's obligation to cooperate includes, among many other things, the duty to provide:

45.     Identity of Individuals.  SUMITOMO RIKO will provide Settlement Class Counsel with the identity of all current and former employees, directors and officers

of SUMITOMO RIKO who: (1) were interviewed by the DOJ, JFTC, or EU in connection with alleged anticompetitive activity concerning Anti-Vibration Rubber Parts or Automotive Hoses; or (2) appeared before the grand jury in the DOJ investigation of conduct concerning Anti-Vibration Rubber Parts and/or Automotive Hoses.

46.     Documents.   SUMITOMO RIKO will use its best efforts to substantially complete the production of the following Documents no later than 60 days after preliminary approval by the Court of this Agreement: (1) documents in the files of up to nine (9) document custodians, the identity of which will be agreed between the parties no later than 15 days following Execution of this Agreement, that are responsive to End Payor Plaintiffs' First Request for the Production of Documents, served on SUMITOMO RIKO on June 16, 2015; and (2) Request for Quotation files and Annual Price Reduction files for the period from January 1, 1996 through the February 8, 2013 concerning Anti-Vibration Rubber Products or Automotive Hoses incorporated in Vehicles manufactured and/or sold in the United States. These RFQ and APR files include documents concerning SUMITOMO RIKO's determination of its prices for Anti-Vibrational Rubber Parts and Automotive Hoses; how SUMITOMO RIKO's employees were trained or instructed to bid and set prices and documents relating to issued RFQs, if any; SUMITOMO RIKO's bids submitted in response to RFQs; RFQ award notifications to SUMITOMO RIKO; and SUMITOMO RIKO's post-award price adjustments. All currently pending discovery requests will be withdrawn, and no further discovery will be sought from any SUMITOMO RIKO entity or Releasee other than as provided for in the Settlement Agreement.

47.     Transactional Data.     Transactional data, to the extent it exists in SUMITOMO RIKO's ERP system or financial and accounting electronic databases as of two years after the Execution Date of this Agreement, concerning SUMITOMO RIKO's sales of (1) Anti-Vibration Rubber Parts for use in Vehicles sold in the United States to Original Equipment Manufacturers or other purchasers from January 1, 1994 until two years after the Execution Date and (2) Automotive Hoses for use in Vehicles sold in the United States to Original Equipment Manufacturers or other purchasers from May 2001 to two years from the Execution Date of this Agreement except as provided herein, SUMITOMO RIKO will only produce the data that exists as of the Execution Date of this Agreement and will not be obligated to do any analyses of the data for Settlement Class Counsel, outside of the interviews described in paragraph 48. SUMITOMO RIKO will provide any translations of the above data that may exist as of the Execution Date of this Agreement. With respect to any electronic transactional data generated within the two years after the Execution Date of this Agreement, SUMITOMO RIKO shall have no on-going obligation to produce such data as it is generated. However, SUMITOMO RIKO will provide, in response to a written request from Settlement Class Counsel, a single production of electronic transactional data generated during the two years after the Execution Date of this Agreement, as it exists in SUMITOMO RIKO's electronic databases at the time of the request, within sixty (60) days of the receipt of such request. SUMITOMO RIKO will preserve such transactional data until two years after the Execution date of this Agreement. SUMITOMO RIKO will produce transaction data only from existing electronic transaction databases and will not be

required to compile any data from individual invoices, individual personal computers, or transactional Documents, except that, to the extent SUMITOMO RIKO has not recorded or maintained electronic transaction data for any period between January 1, 1994 and two years from the Execution Date of this Agreement for Anti-Vibration Rubber Parts or for any period between January 1, 2001 and two years from the Execution Date of this Agreement for Automotive Hoses, then SUMITOMO RIKO will use reasonable efforts to produce existing hard copy records of sales transaction for Anti-Vibration Rubber Parts or Automotive Hoses for use in Vehicles manufactured and/or sold in the United States, to the extent such hard copy records exist, not recorded or maintained electronically in the existing electronic sales transaction databases. 48. In addition, after conducting a reasonable search, SUMITOMO RIKO shall, to the best of its knowledge, identify those Vehicles sold in the United States that contain Anti-Vibration Rubber Parts and/or Automotive Hoses sold by SUMITOMO RIKO.

48.     In addition, after conducting a reasonable search, SUMITOMO RIKO shall, to the best of its knowledge, identify those Vehicles sold in the United States that contain Anti-Vibration Rubber Parts and/or Automotive Hoses sold by SUMITOMO RIKO.

49.     Attorney Proffers and Witness Interviews.    Additionally, SIMITOMO RIKO shall use its best efforts to cooperate with Settlement Class Counsel.

(a)     SUMITOMO RIKO's counsel will make themselves available at a mutually agreed location in the United States for up to three (3) meetings of one business day each to provide an attorney's proffer of facts known to them. End-Payor Plaintiffs and Settlement Class Counsel will not attribute any factual information obtained from Attorney Proffers to SUMITOMO RIKO or their counsel. Information provided in the attorneys' proffers shall be governed by the Protective Orders in the Actions, including the limitations contained in those Protective Orders on the uses to which information may be put and the persons to whom disclosure may be made. SUMITOMO RIKO further agrees to make up to six (6) persons available for interviews and depositions, provide up to six (6) declarations or affidavits from the same persons, and make those persons available to testify at trial in the Actions. SUMITOMO RIKO will consider in good faith any reasonable request by End-Payor Plaintiffs for additional attorneys' proffers, interviews, and/or depositions to assist with litigation against the remaining defendants in the Anti-Vibration Rubber Parts and/or Automotive Hoses cases. Any deposition taken pursuant to this paragraph shall be conducted at a mutually agreed-upon location, and shall be limited to a total of seven (7) hours over one (1) day unless the deposition is in a language other than English, in which case the deposition shall be limited to a total of thirteen (13) hours over two (2) days.

(b)     In addition to its Cooperation obligations set forth herein, SUMITOMO RIKO agrees to produce through affidavit(s) or declaration(s) and/or at trial, in Settlement Class counsel's discretion, representatives qualified to authenticate, establish as business records, or otherwise establish any other necessary foundation for admission into evidence of any documents or transactional data produced or to

be produced by SUMITOMO RIKO. Settlement Class counsel agree to use their best efforts to obtain stipulations that would avoid the need to call SUMITOMO RIKO witnesses at trial for the purpose of obtaining such evidentiary foundations.

(*Id.* at ¶¶ 45-49.)

**Released Claims**: The Settlement Agreement releases only SUMITOMO RIKO (and their respective past and present, direct and indirect, parents, subsidiaries, associates, and affiliates, including but not limited to the predecessors, successors and assigns of each of the above; and each and all of the present and former principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, executors, administrators, and assigns of each of the foregoing) from all Settlement Class Member claims arising out of or relating in any way to any conduct alleged in the Complaints,[2] or any act or omission of SUMITOMO RIKO, concerning Anti-Vibration Rubber Parts or Automotive Hoses. *See* Settlement Agreement ¶ 9.

The release does not include (1) any claims made by direct purchasers of Anti-Vibration Rubber Parts or Automotive Hoses as to such direct purchasers; (2) any claims made by automotive dealerships that are indirect purchasers of Anti-Vibration Rubber Parts or Automotive Hoses; (3) any claims made by truck and equipment dealerships that are indirect purchasers of Anti-Vibration Rubber Parts or Automotive Hoses; (4) any claims made by any state, state agency, or instrumentality or political subdivision of a state as to government purchases and/or penalties; (5) claims involving any negligence, personal injury, breach of contract, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, securities or similar claim relating to Anti-Vibration Rubber Parts or Automotive Hoses; (6) claims concerning any automotive part other

---

[2] "Complaints" means each of the following: (a) Consolidated Amended Class Action Complaint, Case No. 13-cv-00803 (June 13, 2014), ECF No. 20 (Anti-Vibration Rubber Parts); (b) Class Action Complaint for Damages and Injunctive Relief, Case No. 15-cv-12893 (August 14, 2015), ECF No. 1 (Automotive Hoses).

than Anti-Vibration Rubber Parts or Automotive Hoses; (7) claims under laws other than those of the United States relating to purchases made outside of the United States of Vehicles containing Anti-Vibration Rubber Parts or Automotive Hoses; and (8) damage claims under the state or local laws of any jurisdiction other than an Indirect Purchaser State. *Id*. ¶ 21. The Settlement Agreement also provides that SUMITOMO RIKO's sales shall remain in the continuing litigation against the non-settling Defendants, who remain jointly and severally liable for all damages caused by the conspiracies. *Id*. ¶ 62.

## ARGUMENT

The Settlement Agreement is not only fair, reasonable, and adequate—resulting from extensive arm's length negotiations by experienced counsel—but also a thoughtfully conceived resolution of the proposed Settlement Classes' claims that maximizes their recovery and guarantees early, significant cooperation by SUMITOMO RIKO in the continued prosecution of EPPs' claims.

**I.** **Preliminary Approval Should be Granted Because the Proposed Settlement Falls Well Within the Range of Possible Approval.**

It is well-established in the Sixth Circuit that there is an overriding public interest in settling and quieting litigation, particularly class actions. *See Griffin v. Flagstar Bancorp, Inc.*, Case No. 2:10-cv-10610, 2013 U.S. Dist. LEXIS 173702, at *6 (E.D. Mich. Dec. 12, 2013) (*citing UAW v. Gen. Motors. Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions")); *see also IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 593 (E.D. Mich. 2006). "This policy applies with equal force whether the settlement is partial, involving only some of the defendants, or complete." *In re Packaged Ice Antitrust Litig.*, Case No. 08-MD-01952, 2011 U.S. Dist. LEXIS 17255, at *44 (E.D. Mich. Feb. 22, 2011) ("*Packaged Ice*"); *see also Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 247 (7th Cir. 1992) ("In complex litigation with a

9

plaintiff class, 'partial settlements often play a vital role in resolving class actions'" (*quoting* MANUAL FOR COMPLEX LITIGATION (SECOND) § 30.46 (1986)). In fact, "settlement should be facilitated at as early a stage of the litigation as possible." 6A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1522, at 225-26 (2d ed. 1990) (*citing* 1983 Advisory Committee Notes); *see also* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 13.12 (2004) ("*Manual*") ("[S]ettlement should be explored early in the case.").

Approval of a proposed class action settlement proceeds in two steps. First, the court grants preliminary approval to the settlement and provisionally certifies a settlement class. Second, after notice of the settlement is provided to the class and the court conducts a fairness hearing, the court may grant final approval to the settlement. *See Manual* § 21.63; *see also Bobbitt v. Acad. of Reporting,* 2009 WL 2168833, at *1 (E.D. Mich. Jul. 21, 2009) (citing authorities).

A proposed settlement agreement should be preliminarily approved if "the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies . . . and [the settlement] appears to fall within the range of possible approval." *Manual* § 30.41 at 237; *see also Int'l Union, UAW v. Ford Motor Co.*, Case Nos. 05-74730, 06-10331, 2006 U.S. Dist. LEXIS 70471, at *11 (E.D. Mich. July 13, 2006). The district court's role in reviewing settlements "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Clark Equip. Co. v Int'l Union of Allied Industrial Workers of Am.*, 803 F.2d 878, 880 (6th Cir. 1986). Courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." 4 HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 11.41 (4th

10

ed. 2005) ("*Newberg*") (collecting cases); *cf. Rankin v. Rots*, No. 02-cv-71045, 2006 U.S. Dist. LEXIS 45706, at *9 (E.D. Mich. June 28, 2006) ("[T]he only question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.") (internal quotation marks omitted).

In considering whether to grant preliminary approval, the court is not to make a final determination of the adequacy of the settlement or to delve extensively into the merits of the settlement. *See In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, Case No. 1:01-CV-9000, 2001 U.S. Dist. LEXIS 26714, at *17 (E.D. Ohio Oct. 19, 2001) ("*Sulzer Hip*"). These inquiries are reserved for the final approval stage of the class settlement approval process. Nor will any class member's substantive rights be prejudiced by preliminary approval because the proposed preliminary approval is solely to provide authority for notifying the class of the terms of the settlement agreement to set the stage for review of its final approval. *Id.*; *Newburg* § 11.25. Consequently, courts generally engage only in a limited inquiry to determine whether a proposed settlement falls within the range of possible approval and thus should be preliminarily approved. *Sulzer Hip*, 2001 U.S. Dist. LEXIS 26714, at *17-18 (preliminary approval may be based on "informal presentations" because of "substantial judicial processes that remain") (*quoting* MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.41, at 235 (1995)). *See also In re Packaged Ice Antitrust Litig.,* No. 08-MD-01952, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010), *quoting Gautreaux v. Pierce,* 690 F.2d 616, 621 n.3 (7th Cir. 1982) (inquiry limited to settlement's potential for final approval and propriety of class notice and fairness hearing).

In evaluating whether a settlement is fair, reasonable and adequate, courts in the Sixth Circuit consider a number of factors:

> (1) the likelihood of success on the merits weighed against the amount and form of relief in the settlement; (2) the complexity expense and likely duration of the

11

litigation; (3) the opinions of class counsel and class representatives; (4) the amount of discovery engaged in by the parties; (5) the reaction of absent class members; (6) the risk of fraud or collusion; and (7) the public interest. The Court may choose to consider only those factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case.

*Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *46-47 (quotation marks and citations omitted).

A court is not required at the preliminary approval stage to determine whether it ultimately will finally approve the settlement. Nevertheless, as set forth in detail below, preliminary consideration of the factors a court considers when evaluating the fairness of a settlement for purposes of deciding whether to grant final approval supports this Court's granting preliminary approval of the Settlement Agreement.

> **A.    The Settlement Agreement Achieves an Excellent Result for the Proposed Settlement Classes, Particularly Given the Expense, Duration, and Uncertainty of Continued Litigation.**

Antitrust class actions are "arguably the most complex action(s) to prosecute. The legal and factual issues involved are always numerous and uncertain in outcome." *In re Packaged Ice Antitrust Litig.*, Case No. 08-MDL-01952, 2011 U.S. Dist. LEXIS 150427, at *76 (E.D. Mich. Dec. 13, 2011) (*quoting Linerboard*, 292 F. Supp. at 639); *see also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 533 (E.D. Mich. 2003) ("*Cardizem*") ("Moreover, the complexity of this case cannot be overstated. Antitrust class actions are inherently complex"). Motions have already been vigorously contested, and the discovery process would be all the more complicated due to the unique issues that attend discovery against foreign parties.[3] Additionally, SUMITOMO RIKO would assert various defenses, and a jury trial might well turn on close questions of proof, many of which would be the subject of complicated expert testimony, particularly with regard to

---

[3] Because Interim Co-Lead Class Counsel may have to litigate against the other Defendants through trial and appeal, their duties to the Classes preclude a more detailed discussion of their potential litigation risks.  Instead, Class Counsel here recite the arguments that have been and are expected to be raised by its Defendants.

damages, making the outcome of such trial uncertain for both parties. *See*, *e.g.*, *Cardizem*, 218 F.R.D. at 523 (in approving settlement, noting that "the prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery and that "no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict, particularly in complex antitrust litigation"); *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *53-54 (noting the "undeniable inherent risks" in antitrust class action litigation including "whether the class will be certified and upheld on appeal, whether the conspiracies as alleged in the Complaint can be established, whether Plaintiffs will be able to demonstrate class wide antitrust impact and ultimately whether Plaintiffs will be able to prove damages"). *Id.* Given this uncertainty, "[a] very large bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes." *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995).

Moreover, given the stakes involved, an appeal is nearly certain to follow regardless of the outcome at trial. This creates additional risk, as judgments following trial may be overturned on appeal. *See*, *e.g.*, *In re Farmers Ins. Exchange, Claims Representatives' Overtime Pay Litig.*, 481 F.3d 1119 (9th Cir. 2007) ($52.5 million class action judgment following trial reversed on appeal); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs reversed and judgment entered for defendant). And even if class members were willing to assume all of the litigation risks, the passage of time would introduce still more risks in terms of appeals and possible changes in the law that would, in light of the time value of money, make future recoveries less valuable than recovery today. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536 (3d Cir. 2004) ("[I]t was inevitable that post-trial motions and appeals would not only further prolong the litigation but also reduce the value of any recovery to the class."); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 501 (W.D. Pa. 2003) ("[A] future recovery, even

13

one in excess of the proposed Settlement, may ultimately prove less valuable to the Classes than receiving the benefits of the proposed Settlement at this time"). Hence, "the certain and immediate benefits to the Class represented by the Settlement outweigh the possibility of obtaining a better result at trial, particularly when factoring in the additional expense and long delay inherent in prosecuting this complex litigation through trial and appeal." *Cardizem*, 218 F.R.D. at 525.

Against this background, an early settlement providing the substantial benefits afforded here represents an excellent result for the members of the proposed Settlement Classes. SUMITOMO RIKO's $11,400,000.00 payment provides for significant compensation to the proposed Settlement Classes that will be available years earlier than would be the case if litigation against SUMITOMO RIKO continued through trial and appeal. Settlements of this type, before discovery has been completed, create value beyond their direct pecuniary benefit to the class. *See Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *50-51 (noting "significant value" of icebreaker settlement); *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003); *In re Corrugated Container Antitrust Litig.,* 1981 WL 2093 *16 (S.D. Tex. Jan. 27, 1981) ("*Corrugated Container*").

Of particular importance is the fact that the Settlement Agreement requires SUMITOMO RIKO to provide substantial discovery cooperation to Interim Co-Lead Class Counsel by providing transactional data, proffers, interviews, documents, among other cooperation. *See* Settlement Agreement § K (¶¶ 44-54). This cooperation agreement is extremely valuable to the Settlement Classes. The cooperation to be provided by the terms of the Settlement Agreement will afford the EPPs access to transactional data, documents, and witnesses without protracted and expensive discovery—a significant class-wide benefit. *See, e.g.*, *In re Packaged Ice Antitrust Litig.*, Case No. 08-MD-01952, 2010 U.S. Dist. LEXIS 77645, at *44 (E.D. Mich. Aug. 2, 2010) ("Particularly

14

where, as here, there is the potential for a significant benefit to the class in the form of cooperation on the part of the settling Defendant, this Court is reluctant to refuse to consider the very preliminary approval that will trigger that cooperation"); *see also Linerboard*, 292 F. Supp. 2d at 643; *Corrugated Container*, 1981 WL 2093, at *16; *cf. In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008) ("[T]he benefit of obtaining the cooperation of the Settling Defendants tends to offset the fact that they would be able to withstand a larger judgment.").

The value of an early settlement can be so great that early-settling defendants often obtain a substantial discount relative to the remaining defendants. The *Linerboard* court, for example, approved a settlement with the first-settling defendant for less than one percent of sales and approximately one-third of the percentage of sales obtained from the other defendants. *Compare Linerboard*, 292 F. Supp. 2d at 643 (approving icebreaker settlement for approximately 0.4% of sales), *with In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619, 633 (E.D. Pa. 2004) (approving settlements with final two defendants for 1.6% and 2% of sales). In accepting this discounted recovery from the first-settling defendants, the *Linerboard* court emphasized the "substantial" intangible benefit to the class of the icebreaker agreement. 292 F. Supp. 2d at 643.

As set forth above, the Settlement Agreement offers significant benefits to consumers, including injunctive relief. *See* Settlement Agreement at ¶ 32. The Settlement Agreement also specifically provides that it does not alter the non-settling Defendants' joint and several liability for the full damages caused by the alleged conspiracies, including all sales made by these Defendants. *See* Settlement Agreement ¶ 62. In this regard, the Settlement Agreement is similar to one of the settlements approved in *Corrugated Container*, where the court noted the "valuable provision" under which plaintiffs reserved their right to recover full damages from the remaining

defendants, less the actual amount of the initial settlement. 1981 WL 2093, at *17; *see also In re Uranium Antitrust Litig.*, 617 F.2d 1248 (7th Cir. 1980); *In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652, 654 (D.D.C. 1979) (approving settlement where class will "relinquish no part of its potential recovery" due to joint and several liability). Here too, the EPPs will be able to pursue their full damages, with no diminution other than deduction of the actual SUMITOMO RIKO settlement amount.

**B.   The Settlement Agreement is the Result of Thorough Arm's-Length Negotiations Conducted By Highly Experienced Counsel.**

The judgment of proposed Settlement Class Counsel that the settlement is in the best interest of the proposed Settlement Class "is entitled to significant weight, and supports the fairness of the class settlement." *Sheick v. Auto Component Carrier LCC*, Case No. 2:09-cv-14429, 2010 U.S. Dist. LEXIS 110411, at *51 (E.D. Mich. Oct. 18, 2010) (quoting *IUE-CWA*, 238 F.R.D. at 597); *see also Cardizem*, 218 F.R.D. at 525. Courts give great weight to the recommendation of experienced counsel for the parties in evaluating the adequacy of a settlement.

"Preliminary approval of a proposed settlement is based upon the court's familiarity with the issues and evidence, as well as the arms-length nature of the negotiations prior to the proposed settlement, ensuring that the proposed settlement is not illegal or collusive." *Thacker v. Chesapeake Appalachia, L.L.C.*, 259 F.R.D. 262 (E.D. Ky. 2009) (quoting *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 370 (S.D. Ohio 1990). The Settlement Agreement here is the result of lengthy and hard-fought negotiations between counsel experienced in complex antitrust and consumer class action litigation. The settlement was negotiated for many months by Interim Co-Lead Class Counsel in a process that involved multiple discussions with counsel for SUMITOMO RIKO, including in-person meetings. Interim Co-Lead Class Counsel undertook a

16

diligent and thorough investigation of the legal and factual issues posed by this litigation and consulted extensively with experienced economists before negotiating this deal.

Counsel for the EPPs was well-informed about the facts and the strength of the claims asserted when the terms of the Settlement Agreement were negotiated. *See Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *56 ("[T]he absence of formal discovery is not an obstacle [to settlement approval] so long as the parties and the Court have adequate information in order to evaluate the relative position of the parties.") (quotation marks and citation omitted); *Griffin v. Flagstar Bancorp, Inc.*, 2013 U.S. Dist. LEXIS 173702 (same).

Moreover, these negotiations were adversarial and conducted in the utmost good faith. "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008); *Bowers v. Windstream Ky. East, LLC*, Civil Action No. 3:09-CV-440-H, 2013 U.S. Dist. LEXIS 157242, at *5 (W.D. Ky. Nov. 1, 2013). There is nothing in the course of the negotiations or the substance of the settlement that "disclose[s] grounds to doubt its fairness." *Manual* § 30.41.

## II.   The Proposed Settlement Classes Should Be Provisionally Certified Pursuant to Rule 23.

The Manual notes the propriety of certifying a class solely for purposes of settlement, *see Manual* § 21.32, and courts in this Circuit routinely provisionally approve a proposed settlement class before deciding plaintiffs' motion for class certification. *See, e.g.*, *In re Delphi Corp. Sec. Derivatives & ERISA Litig.*, 248 F.R.D. 483, 486 n. 2 (E.D. Mich. 2008) (granting final approval to both ERISA and Securities settlement classes, noting the court's earlier, preliminary approval of the settlement classes granted prior to a hearing on defendants' motions to dismiss); *Cardizem*, 218 F.R.D. at 516-17, 530 (granting final approval of proposed settlement, noting its earlier preliminary approval of both the proposed settlement class and the proposed settlement agreement

granted prior to class certification and prior to hearing on motions to dismiss).  A court may grant provisional certification where, as here, the proposed settlement class satisfies the four prerequisites of Rule 23(a) (numerosity, commonality, typicality and adequacy), as well as one of the three subsections of Rule 23(b). *See In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2010 U.S. Dist. LEXIS 140235, at *27-28 (E.D. Mich. Sept. 2, 2010).

While in the context of a litigated class certification motion, a trial court must conduct a "rigorous analysis" to confirm that the requirements of Rule 23 have been met, *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011), even in that context "the requisite 'rigorous analysis' of the record and consideration of the merits must be focused on and limited to the question whether the Rule's requirements have been established." *Cason-Merenda v. VHS of Mich., Inc.*, 2013 U.S. Dist. LEXIS 131006, at *20-21 (E.D. Mich. Sept. 13, 2013) (citing *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 851-52 (6th Cir. 2013)). Permissible inquiry into the merits of plaintiffs' claims at the class certification stage is limited:

> Rule 23 grants courts no license to engage in free-ranging merits inquiries at the class certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013) ("*Amgen*") (citing *Dukes*, 131 S. Ct. at 2552 n.6). "In other words, district courts may not turn the class certification proceedings into a dress rehearsal for the trial on the merits." *In re Whirlpool Corp.*, 722 F.3d 838, 851-52 (internal quotation marks and citation omitted).  Here, as demonstrated below, even under a "rigorous analysis," the requirements of Rule 23 are easily met.

### A.    The Proposed Settlement Classes Meet the Requirements of Rule 23(a).

Horizontal price fixing class actions are routinely certified by the Courts in this District and elsewhere. EPPs' allegations of "a per se violation of the antitrust laws are exactly the kind of

allegations which may be proven on a class-wide basis through common proof." *In re Southeastern Milk Antitrust Litig.*, Master File No. 2:09-MD-1000, 2010 U.S. Dist. LEXIS 94223, at *35 (E.D. Tenn. Sept. 7, 2010). "Courts have held that the existence of a conspiracy is the predominant issue in price fixing cases, warranting certification of the class even where significant individual issues are present." *Id.* at *33 (internal quotation marks and citations omitted). "As a rule of thumb, a price fixing antitrust conspiracy model is generally regarded as well suited for class treatment." *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 409 (S.D. Ohio 2007); *see also Hyland v. Homeservices of Am., Inc.*, Case No. 3:05-CV-612-R, 2008 U.S. Dist. LEXIS 90892, at *12 (W.D. Ky. Nov. 6, 2008).

### i.   The Proposed Settlement Classes Are So Numerous That It Is Impracticable to Bring All Class Members Before the Court.

No magic number is required to satisfy the numerosity requirement of Rule 23(a)(1). *Miller v. Univ. of Cincinnati*, 241 F.R.D. 285, 288 (S.D. Ohio 2006). A class representative need only show that joining all members of the potential class is extremely difficult or inconvenient. *Golden v. City of Columbus*, 404 F.3d 950, 965 (6th Cir. 2005). The "sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1)." *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 403 (citing *Bacon v. Honda of America Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004)); *see also In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).

Here, the proposed Settlement Classes consist of 1) all persons and entities who, from March 1, 1996 through the Execution Date of the Settlement Agreement between SUMITOMO RIKO and the EPPs, purchased or leased a new Vehicle in the United States not for resale which included Anti-Vibration Rubber Parts as a component part or indirectly purchased one or more of these products as a replacement part and 2) all persons and entities who, from and including May

19

2003 through the Execution Date of the Settlement Agreement between SUMITOMO RIKO and the EPPs, purchased or leased a new Vehicle in the United States not for resale which included Automotive Hoses as a component part or indirectly purchased one or more of these products as a replacement part. It is beyond dispute that millions of persons and entities throughout the United States have purchased or leased vehicles containing Anti-Vibration Rubber Parts and Automotive Hoses for personal use. As a result of the large number of putative class members and their geographic distribution throughout the United States, joinder is highly impractical – if not impossible.

> ii. **End-Payor Plaintiff Class Representatives and the Proposed Settlement Classes Share Common Legal and Factual Questions.**

Commonality only requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). While Rule 23(a)(2) speaks of questions of law or fact in the plural, "there need be only one common question to certify a class." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d at 853; *see also Cason-Merenda*, 2013 U.S. Dist. LEXIS 131006, at *22 (one common question of law or fact is sufficient); *Griffin v. Flagstar Bancorp Inc.*, 2013 U.S. Dist. LEXIS 173702 (same); *Date v. Sony Elecs., Inc.*, Case No. 07-15474, 2013 U.S. Dist. LEXIS 108095, at *10 (E.D. Mich. July 31, 2013) (same).

This prerequisite is readily satisfied here because "antitrust price-fixing conspiracy cases, by their nature, deal with common legal and factual questions about the existence, scope and effect of the alleged conspiracy." *In re Aluminum Phosphide Antitrust Litig.*, 160 F.R.D. 609, 613 (D. Kan. 1995). Thus, in price-fixing cases, courts "have consistently held that the very nature of a conspiracy in an antitrust action compels a finding that common questions of law and fact exist." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486 PJH, 2006 U.S. Dist. LEXIS 39841 (N.D. Cal. June 5, 2006); *see also* Newberg § 3:10 at 278 ("[In an] antitrust

action on behalf of purchasers who have bought defendants' products at prices that have been maintained above competitive levels by unlawful conduct, the courts have held that the existence of an alleged conspiracy or monopoly is a common issue that will satisfy the Rule 23(a)(2) prerequisite").

Here, EPPs have identified the following issues common to the proposed Settlement Classes:

- Whether Defendants engaged in combinations and conspiracies among themselves to fix, raise, maintain, or stabilize the prices of Anti-Vibration Rubber Parts and Automotive Hoses sold in the United States;

- Whether Defendants engaged in combinations and conspiracies among themselves to rig bids quoted to customers of Anti-Vibration Rubber Parts and Automotive Hoses sold in the United States;

- Whether Defendants engaged in combinations and conspiracies to allocate customers and the markets for Anti-Vibration Rubber Parts and Automotive Hoses sold in the United States;

- The duration of the illegal conspiracy or conspiracies; and

- Whether Defendants' conduct resulted in unlawful overcharges on the prices of Anti-Vibration Rubber Parts and Automotive Hoses.

Any one of these substantive issues would, standing alone, establish the requisite commonality under Rule 23(a)(2).

### iii. End-Payor Plaintiff Class Representatives' Claims Are Typical of the Claims of the Members of the Proposed Settlement Classes.

Third, Rule 23(a) requires typicality of the class representatives' claims. *See* Fed. R. Civ. P. 23(a)(3). "The [typicality] requirement is not onerous," *Int'l Union, UAW v. Ford Motor Co.*, 2006 U.S. Dist. LEXIS 70471, at *54, and courts liberally construe it. *See In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 403. "In the antitrust context, typicality is established when the named plaintiffs and all class members allege[] the same antitrust violation by defendants." *Cason-*

21

*Merenda*, 2013 U.S. Dist. LEXIS 131006, at *25 (quoting *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 405); *see also Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000); *In re Am. Med. Sys.*, 75 F.3d at 1082; *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *40-41. "If there is a strong similarity of legal theories, the requirement [of typicality] is met, even if there are factual distinctions among named and absent class members." *Griffin v. Flagstar Bancorp, Inc.*, 2013 U.S. Dist. LEXIS 173702, at *17-18 (quotation marks and citation omitted); *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *40 (same).

Because the End-Payor Plaintiff Class representatives and the members of the proposed Settlement Classes believe they are all victims of the conspiracies to fix prices, rig bids, and allocate the market and customers for Anti-Vibration Rubber Parts and Automotive Hoses, Rule 23(a)(3) is satisfied. *See Cason-Merenda*, 2013 U.S. Dist. LEXIS 131006, at *26 (finding typicality met where "the claims of the named Plaintiffs and those of the remaining members of the proposed class all arise from the same conspiracy and are based on the same theory of liability under the Sherman Act.") (internal quotation marks and citation omitted)); *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *40-41 ("Because all Class Members' claims arise from . . . a conspiracy to allocate markets in violation of the Sherman Act, their claims are based on the same legal theory and the typicality requirement . . . is met").

### iv. Proposed Settlement Class Counsel and End-Payor Plaintiff Class Representatives Will Fairly and Adequately Protect the Interests of the Proposed Settlement Classes.

The final requirement of Rule 23(a) is that the representative parties "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Sixth Circuit has articulated two criteria for determining adequacy of representation: "'1) [t]he representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *In re Foundry Resins*

22

*Antitrust Litig.*, 242 F.R.D. at 407 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)). EPPs submit that there are no conflicts between them and the proposed Settlement Classes because EPPs and members of the proposed Settlement Classes: (i) purchased or leased in the United States motor Vehicles containing the relevant parts; and/or (ii) indirectly purchased the relevant parts as replacement parts and have the same interest in establishing liability. *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) (certifying settlement class and holding that "so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes" (internal quotation marks and citation omitted)). EPPs and the members of the proposed Settlement Classes also share a common interest in obtaining SUMITOMO RIKO's substantial cooperation in prosecuting the claims against the non-settling Defendants.

Rule 23(g) requires the Court to examine the capabilities and resources of class counsel to determine whether they will provide adequate representation to the class. The proposed Settlement Classes are represented by counsel with extensive experience in antitrust and class action litigation. They have vigorously prosecuted the classes' claims, and they will continue to do so through all phases of the litigation, including trial. *See Marcus v. Dep't of Revenue*, 206 F.R.D. 509, 512 (D. Kan. 2002) ("In absence of evidence to the contrary, courts will presume the proposed class counsel is adequately competent to conduct the proposed litigation"). The Court appointed Cotchett, Pitre & McCarthy, LLP, Robins Kaplan LLP, and Susman Godfrey L.L.P. as Interim Co-Lead Class Counsel in these Actions and the other automotive parts antitrust cases within Master File No. 2:12-md-2311. *See* Case Management Order No. 3 filed as ECF No. 271. For the

same reasons that the Court appointed them to this position, it should appoint them Settlement Class Counsel here.

### B.  The Proposed Settlement Classes Meet the Requirements of Rule 23(b)(3).

To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: common questions must predominate over any questions affecting only individual members; and class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) ("*Amchem*"); *see also In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008). With respect to both requirements, the Court need not inquire whether the "case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620 (internal citations omitted).

### i.  Common Questions of Law and Fact Predominate.

"Rule 23(b)(3) does not mandate that a plaintiff seeking class certification prove that each element of the claim is susceptible to classwide proof." *In re Whirlpool Corp.*, 722 F.3d at 859. Instead, "'[a] claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individualized position.'" *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 408 (quoting *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. at 307). Common questions need only predominate; they need not be dispositive of the litigation. *Id.* (citing *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D. Minn. 1995)); *cf. In re Scrap Metal Antitrust Litig.*, 527 F.3d at 535-36 (holding issues regarding the amount of damages do not destroy predominance). "[T]he mere fact that questions peculiar to each individual member of the class action remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." *Cason-Merenda v. VHS of*

24

*Mich., Inc.*, 2013 U.S. Dist. LEXIS 131006, at *19-20 (quoting *Powers v. Hamilton Cnty. Public Defender Comm.*, 501 F.3d 595, 619 (6th Cir. 2007)). As pertinent to the EPPs' request here to provisionally certify the proposed Settlement Classes under Rule 23(b)(3), the Supreme Court very recently instructed that "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen*, 133 S.Ct. at 1191.

Because the EPPs allege conduct from which all proposed Settlement Class Members' alleged injuries arise, issues common to the proposed Settlement Class Members—for example, the existence and scope of the alleged price-fixing conspiracy or conspiracies among Defendants and the market impact of Defendants' conspiracy or conspiracies—predominate over any individual questions, and therefore class treatment of the claims is appropriate for purposes of this settlement. *See Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging . . . violations of the antitrust laws."); *see also In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 254 (D.D.C. 2002) ("[A]s a rule, the allegation of a price-fixing conspiracy is sufficient to establish predominance of common questions[.]") (quoting NEWBERG ON CLASS ACTIONS § 18.28 at 18-98 (3d ed. 1992)). This Circuit has also held "[p]redominance is a test readily met in certain cases alleging . . . violations of the antitrust laws, because proof of the conspiracy is a common question that is thought to predominate over the other issues of the case." *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 535 (*quoting Amchem*, 521 U.S. at 625).[4] Furthermore, here the

---

[4] Other courts have recognized that the existence and scope of an alleged antitrust conspiracy are matters susceptible to class-wide proof, and thus tend to support a finding that common issues predominate over individual ones as to at least the first element of an antitrust conspiracy claim. *See, e.g., Cordes & Co. Financial Services, Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 105 (2d Cir. 2007); *Blades v. Monsanto Co.*, 400 F.3d 562, 572 (8th Cir. 2005); *In re Blood Reagents Antitrust Litig.*, 283 F.R.D. 222, 234 (E.D. Pa. 2012); *Reed v. Advocate Health Care*, 268 F.R.D.

evidence that will prove a violation as to one Settlement Class Member is common to the others and will be sufficient to prove it as to all—the anticompetitive conduct is not dependent on the separate conduct of the individual Settlement Class Members. *See Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *43.

This is true even if there are individual state law issues, as long as the common issues still outweigh the individual ones;  *e.g.*, as long as a common theory can be alleged as to liability and impact that can be pursued by the class. *See, e.g., In re Whirlpool Corp.*, 722 F.3d at 861 ("[I]t remains the 'black letter rule' that a class may obtain certification under Rule 23(b)(3) when liability questions common to the class predominate over damages questions unique to class members." (internal quotation marks and citation omitted)); *Scrap Metal*, 527 F.3d at 535 (where common issues determine liability, fact that damages calculation may involve individualized issues does not defeat predominance). Issues common to the proposed Settlement Classes predominate in these cases. The presence of these common issues of liability and impact predominates over any individual issues and strongly supports provisional certification of the proposed Settlement Classes.

### ii. A Class Action is the Superior Method to Adjudicate These Claims.

Rule 23(b)(3) also requires that a class action be superior to other available methods of fairly adjudicating the controversy. The superiority of class certification over other available methods is measured by consideration of certain factors, including: the class members' interests in controlling the prosecution of individual actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability of concentrating the litigation of various claims in the particular forum; and the likely difficulties in

---

573, 581 (N.D. Ill. 2009); *In re Urethane Antitrust Litig.*, 251 F.R.D. 629, 634 (D. Kan. 2008); *Foundry Resins*, 242 F.R.D. at 408.

managing a class action. *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446 (N.D. Ohio Mar. 8, 2010).

Courts consistently hold that class actions are a superior method of resolving antitrust claims like those alleged here. *See In re Universal Serv. Fund Tel. Billing Practices Litig.*, 219 F.R.D. 661, 678 (D. Kan. 2004) (noting that individual litigation of antitrust claims would be "grossly inefficient, costly, and time consuming"). Here, the interests of Settlement Classes' members in individually controlling the prosecution of separate claims are outweighed by the efficiency of the class mechanism. *Cardizem*, 200 F.R.D. at 325-26 (finding that class action is superior because it ensures fair and efficient adjudication). Untold numbers of Settlement Class members purchased or leased Vehicles containing the relevant parts as a component part or indirectly purchased the relevant parts as a replacement part for a Vehicle during the settlement class period; resolving these claims in the context of a class action would conserve both judicial and private resources and would hasten the class members' recovery. *See, e.g.*, *In re Foundry Resins*, 242 F.R.D. at 411-12 ("Repeatedly litigating the same issues in individual suits would produce duplicate efforts, unnecessarily increase litigation costs, impose an unwarranted burden on this Court and other courts, and create a risk of inconsistent results").[5]

## III.    Notice to the Class Members.

Rule 23(c)(2)(B) requires the Court to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." With regard to class action claims that are settled, Rule 23(e)

---

[5] Another criterion of Rule 23(b)(3) is manageability. The Supreme Court has made clear that manageability need not be considered where, as here, a class is being certified for settlement purposes. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial").

instructs courts to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "[D]ue process does not require actual notice, but rather a good faith effort to provide actual notice." *Thacker*, 259 F.R.D. at 271-72. To comport with the requirements of due process, notice must be "reasonably calculated to reach interested parties." *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008) (*citing Karkoukli's, Inc. v. Dohany*, 409 F.3d 279, 283 (6th Cir. 2005)).

Because it would be most cost-effective and efficient to disseminate notice of this settlement together with notice of other settlements, the parties have agreed to defer dissemination of notice. As set forth in the Settlement Agreement, "End-Payor Plaintiffs shall, at a time to be decided in their sole discretion within one (1) year of the Execution Date, submit to the Court a motion for authorization to disseminate notice of the settlement and final judgment contemplated by this Agreement to all members of the Settlement Classes identified by End-Payor Plaintiffs ("Notice Motion")." Settlement Agreement ¶ 16. The proposed final judgment is attached to this Motion as Exhibit 2. The Notice Motions shall include "a proposed form of, method for, and date of dissemination of settlement notice in the Actions." *Id.* Accordingly, with the Court's permission, proposed Settlement Class Counsel will submit a proposed motion for authorization to disseminate notice at a later date.

## CONCLUSION

For the foregoing reasons, EPPs respectfully request that the motion for preliminary approval be granted and that the Court enter the accompanying Proposed Order:

1. Preliminarily approving the Settlement Agreement;

2. Provisionally certifying the proposed Settlement Classes;

3. Staying the proceedings against SUMITOMO RIKO (as defined in the Settlement Agreement) in accordance with the terms of the Settlement Agreement; and

28

4.   Appointing Interim Co-Lead Class Counsel for the EPPs as Settlement Class Counsel for this settlement.

Date: September 7, 2016                    Respectfully submitted,

                                          _/s/ Steven N. Williams_____
                                          Steven N. Williams
                                          Demetrius X. Lambrinos
                                          Elizabeth Tran
                                          Joyce Chang
                                          **COTCHETT, PITRE & McCARTHY, LLP**
                                          San Francisco Airport Office Center
                                          840 Malcolm Road
                                          Burlingame, CA 94010
                                          Telephone: (650) 697-6000
                                          swilliams@cpmlegal.com
                                          dlambrinos@cpmlegal.com
                                          etran@cpmlegal.com
                                          jchang@cpmlegal.com

                                          _/s/ Hollis Salzman_____
                                          Hollis Salzman
                                          Bernard Persky
                                          William V. Reiss
                                          **ROBINS KAPLAN LLP**
                                          601 Lexington Avenue, Suite 3400
                                          New York, NY 10022
                                          Telephone: (212) 980-7400
                                          Hsalzman@RobinsKaplan.com
                                          Bpersky@RobinsKaplan.com
                                          Wreiss@RobinsKaplan.com

                                          _/s/ Marc M. Seltzer___
                                          Marc M. Seltzer
                                          Steven G. Sklaver
                                          **SUSMAN GODFREY L.L.P.**
                                          1901 Avenue of the Stars, Suite 950
                                          Los Angeles, CA 90067-6029
                                          Telephone: (310) 789-3100
                                          mseltzer@susmangodfrey.com
                                          ssklaver@susmangodfrey.com

Terrell W. Oxford
Omar Ochoa
**SUSMAN GODFREY L.L.P.**
901 Main Street, Suite 5100
Dallas, TX 75202
Telephone: (214) 754-1900
toxford@susmangodfrey.com
oochoa@susmangodfrey.com

*Interim Co-Lead Class Counsel for the*
*Proposed End-Payor Plaintiff Classes*

*/s/ E. Powell Miller*
E. Powell Miller
Devon P. Allard
Mariell R. McLatcher
**THE MILLER LAW FIRM, P.C**.
The Miller Law Firm, P.C.
950 W. University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
epm@millerlawpc.com
dpa@millerlawpc.com
mrm@ millerlawpc.com

*Interim Liaison Class Counsel for the*
*Proposed End-Payor Plaintiff Classes*

30

**CERTIFICATE OF SERVICE**

I hereby certify that on September 7, 2016 I caused the foregoing END-PAYOR PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF END-PAYOR PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT WITH SUMITOMO RIKO AND PROVISIONAL CERTIFICATION OF SETTLEMENT CLASSES to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Steven N. Williams*
Steven N. Williams
