# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In Re:  AUTOMOTIVE PARTS ANTITRUST LITIGATION | : Master File No. 12-md-02311<br>: Honorable Marianne O. Battani<br>: |
| In Re: ANTI-VIBRATIONAL RUBBER PARTS | : 2:13-cv-00803-MOB-MKM<br>:<br>:<br>: |
| THIS DOCUMENT RELATES TO:<br>END PAYOR ACTIONS | : **Oral Argument Requested**<br>:<br>: |

# DEFENDANTS' MOTION TO ENFORCE THIS COURT'S FINAL JUDGMENTS

Pursuant to this Court's exclusive jurisdiction over its final judgments in the EPP case, Defendants Bridgestone Corporation; Bridgestone APM Company; Yamashita Rubber Co., Ltd.; YUSA Corporation; Sumitomo Riko Company, Ltd.; DTR Industries, Inc.; Toyo Tire & Rubber Co., Ltd.; Toyo Tire North America OE Sales LLC; and Toyo Automotive Parts (USA), Inc. (collectively, "Defendants") move to enjoin Jerry A. Anderson Sr., Laura L. LaRue, and Christopher L. Lee (collectively, "Releasors") from continuing their action, 2:13-cv-00801-MOB-MKM; 2:16-cv-14057-MOB-MKM, against the Defendants because it proceeds in direct violation of the injunctions contained in this Court's final judgments entered against each of the Defendants. *See* ECF No. 216, 257, 258, 260.

Prior to the filing of this motion, the Releasors were informed that their continued prosecution of this action would violate this Court's injunctions, but they did not consent to dismissing their claims. Defendants rely on the attached Memorandum of Law and exhibits in support of their motion.

Respectfully submitted,

June 4, 2019

*/s/ Steven A. Reiss*

Steven A. Reiss
Adam C. Hemlock
David Fitzmaurice
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
steven.reiss@weil.com
adam.hemlock@weil.com
david.fitzmaurice@weil.com

Frederick R. Juckniess
**JUCKNIESS LAW FIRM PLC**
302 E. Liberty Street, Ste. 203
Ann Arbor, MI  48104
Telephone: (734) 707-1515
Rick@Juckniesslaw.com

*Counsel for Bridgestone Corporation and*
*Bridgestone APM Company*

*/s/ David C. Giardina* (with consent)
David C. Giardina
Kevin Fee
**SIDLEY AUSTIN LLP**
One S. Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
dgiardina@sidley.com
kfee@sidley.com

Bradley J. Schram
**HERTZ SCHRAM PC**
1760 S. Telegraph Road, Suite 300
Bloomfield Hills, MI 48302
Telephone: (248) 335-5000
Facsimile: (248) 335-3346
bschram@hertzschram.com

*Counsel for Toyo Tire & Rubber Co., Ltd.,*
*Toyo Automotive Parts (USA), Inc., and*
*Toyo Tire North America OE Sales LLC*

*/s/ Michael A. Rubin*   (with consent)
James L. Cooper
Michael A. Rubin
Adam Pergament
**ARNOLD & PORTER KAYE**
**SCHOLER LLP**
601 Massachusetts Ave. NW
Washington, DC 20001
Telephone:  (202) 942-5000
james.cooper@apks.com

michael.rubin@apks.com
adam.pergament@apks.com

Fred K. Herrmann (P49519)
Joanne G. Swanson (33594)
**KERR, RUSSELL AND WEBER, PLC**
500 Woodward Avenue
Suite 2500
Detroit, MI 48226
Telephone: (313) 961-0200
fherrmann@kerr-russell.com
jswanson@kerr-russell.com

*On behalf of Yamashita Rubber Co., Ltd.
and YUSA Corporation*


/s/ J. Clayton Everett (with consent)
J. Clayton Everett , Jr.
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 739-3000
Facsimile: (202) 739-3001
jeverett@morganlewis.com

*On behalf of Sumitomo Riko Company, Ltd.
and DTR Industries, Inc.*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| In Re:  AUTOMOTIVE PARTS ANTITRUST LITIGATION | : | Master File No. 12-md-02311 |
| | : | Honorable Marianne O. Battani |
| | : | |
| | : | |
| In Re: ANTI-VIBRATIONAL RUBBER PARTS | : | 2:13-cv-00803-MOB-MKM |
| | : | |
| | : | |
| | : | |
| | : | |
| THIS DOCUMENT RELATES TO: END PAYOR ACTIONS | : | **Oral Argument Requested** |
| | : | |
| | : | |

**DEFENDANTS' MOTION TO ENFORCE THIS COURT'S FINAL JUDGMENTS**

## QUESTION PRESENTED

1.   In its final judgments approving the parties' settlements and dismissing this case with prejudice, this Court enjoined all indirect purchasers of Defendants' AVRPs — including those who purchased AVRPs as stand-alone **replacement parts from subsidiaries** of the Defendants — from "commencing, prosecuting, or continuing . . . any and all claims" relating to Defendants' alleged price fixing conspiracy. Here, however, three individuals have sued Defendants based on their alleged purchase of AVRPs as stand-alone **replacement parts from subsidiaries** of the Defendants, in direct violation of this Court's injunctions. Should the Court enforce its injunctions to dismiss these claims?

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

Amended Final Judgment Approving Settlement Agreement Between End-Payor Plaintiffs And Sumitomo Riko And Entering Dismissal With Prejudice As To Sumitomo Riko, ECF No. 216.

Final Judgment Approving Settlement Agreement Between End-Payor Plaintiffs And The Bridgestone Defendants And Entering Dismissal With Prejudice As To The Bridgestone Defendants, ECF No. 257.

Final Judgment Approving Settlement Agreement Between End-Payor Plaintiffs And Yamashita And Entering Dismissal With Prejudice As To Yamashita Defendants, ECF No. 258.

Final Judgment Approving Settlement Agreement Between End-Payor Plaintiffs And The Toyo Defendants And Entering Dismissal With Prejudice As To The Toyo Defendants, ECF No. 260.

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND .....................................................................................................................3

I.      THE PARTIES' SETTLEMENT OF THE EPP CLASS ACTION ...................................3

II.     THIS COURT'S FINAL JUDGMENT ENJOINING ALL OTHER ACTIONS...............5

III.    THE RELEASORS PURSUE AN ACTION IN DIRECT VIOLATION OF THIS
INJUNCTION.................................................................................................................7

JURISDICTION ....................................................................................................................9

ARGUMENT ......................................................................................................................10

I.      THE RELEASORS' CONTINUATION OF THEIR ACTION DIRECTLY
VIOLATES THIS COURT'S INJUNCTIONS ..............................................................10

II.     THE RELEASORS CANNOT AVOID THIS INJUNCTION BY CLAIMING TO
BE "DIRECT PURCHASERS"......................................................................................11

CONCLUSION....................................................................................................................14

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Apple Inc. v. Pepper.*,
    139 S. Ct. 1514 (2019) ................................................................................12

*CFE Racing Prod., Inc. v. BMF Wheels, Inc.*,
    793 F.3d 571 (6th Cir. 2015) ........................................................................9

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) .....................................................................................9

*McAlpin v. Lexington 76 Auto Truck Stop, Inc.*,
    229 F.3d 491 (6th Cir. 2000) ........................................................................9

**Statutes**

28 U.S.C. § 1292(b) ............................................................................................9

Fed. R. Civ. P. 23(e)(1) .......................................................................................5

Fed. R. Civ. P. 54(b) ...........................................................................................5

Fed. R. Civ. P. 60(b) .........................................................................................11

## PRELIMINARY STATEMENT

In presiding over the *Auto Parts* litigation, this Court has approved an historic amount of settlements, involving scores of different automotive parts and spanning dozens of separate class actions. As a result, the parties to these cases — the named plaintiffs, the settlement class members, and the defendants — have successfully and fairly resolved these massive cases, often avoiding cumbersome fact discovery, expert discovery, and class certification proceedings.

Each of these settlements had robust mechanisms to ensure the integrity of the settlement process and the finality of the proceedings. Each agreement provided that, in exchange for the defendants' payment of the settlement amount, the settlement class members would release all claims against the defendants relating to the conduct alleged in the complaints. These releases were then incorporated and enforced by this Court in its final judgments approving the settlements and enjoining the settlement class members from any further litigation against the defendants relating to the conduct. In each case, every member of the settlement class was covered by this Court's injunction, unless they opted-out of the settlement.

The same is true for all four of the EPP class settlements in the *AVRP* case. As "indirect purchasers," the EPPs settled all claims arising from their purchase of Defendants' AVRPs either as component parts in a new vehicle or as standalone ***replacement parts***. Combined, the *AVRP* Defendants paid the settlement class members a total of $81.5 million. In exchange, every member of the settlement class agreed to release Defendants from "any and all claims" relating to the conspiracy alleged in the EPPs' complaint. These settlement agreements were approved by this Court in its final judgments, and this Court further "enjoined" every member of the settlement class from "commencing, prosecuting, or continuing" any claim against Defendants "arising out of or related to" the alleged conspiracy.

Yet three members of the EPP settlement classes are attempting to proceed with an action before this Court in direct violation of these injunctions. Specifically, in *Anderson et. al v. Bridgestone et. al*, three retail purchasers have taken the core allegations from the EPP complaint — sometimes repeating them *verbatim* — and are suing Defendants based on the exact same conduct. Though styled as a "direct purchaser" action on behalf of a putative class of "direct purchasers" under the Sherman Act, these three retail purchasers do not allege that they purchased AVRPs directly from Defendants. Rather, they allege that they indirectly purchased AVRPs as stand-alone **replacement parts** through one of the Defendants' subsidiary repair stores, making them "indirect purchasers." Recognizing that their Sherman Act claims would otherwise be barred by the *Illinois Brick* rule, they rely on an "exception" to *Illinois Brick* to bring their claims.[1] Their need to rely on an "exception" to *Illinois Brick* underscores their indirect purchaser status because direct purchasers do not have to rely on any "exception" to *Illinois Brick.*

As indirect purchasers of replacement AVRPs from Defendants' subsidiaries, these retail purchasers are members of the EPPs' settlement classes and are covered by the parties' $81.5 million settlement. And because they did not opt out of the EPP settlements, their claims have been fully adjudicated, and this Court has entered final judgments enjoining **these exact claims**. Because their claims are in direct violation of the injunctions issued by this Court, this Court must dismiss their claims.

_____

[1] Specifically, despite being indirect purchasers, these retail purchasers claim that they can sue under the Sherman Act based on the "ownership and control" exception to *Illinois Brick* — an exception so narrow it has never once been applied by the Sixth Circuit in the 41 years since *Illinois Brick* was decided by the Supreme Court. Even if this exception were ultimately found to apply, it does not change their status from indirect purchasers to direct purchasers. Rather, it simply allows their indirect purchaser claims to proceed under the Sherman Act. Nothing can convert their indirect purchase into a direct purchase.

## BACKGROUND

### I.     THE PARTIES' SETTLEMENT OF THE EPP CLASS ACTION

Initially filed on June 13, 2014, the EPPs brought this class action alleging that Defendants conspired to fix the prices of the AVRPs that they manufactured. *See* EPP Second Am. Compl. at ¶ 1. The EPPs alleged that they were injured by having to pay inflated prices for these AVRPs as a result of this conspiracy. *Id.* at ¶¶ 9–10.

According to the EPP complaint, once Defendants manufactured these AVRPs, they were directly purchased by OEMs and Tier 1 suppliers. *See id.* at ¶¶ 92–94. Following this "direct purchase," the EPPs alleged that they "indirectly purchased" these AVRPs in one of two ways. First, the EPPs alleged that they purchased these AVRPs as "component parts" that were installed in the new vehicles they purchased. *Id.* at ¶ 2. Second, the EPPs alleged that they purchased these AVRPs as "***replacement parts***" when they brought their vehicles in for repair. *Id*. (emphasis added).[2] Because neither type of purchase was a direct purchase, *Illinois Brick* prevented the EPPs from bringing any claims under the Sherman Act. Accordingly, the EPPs brought these indirect purchaser claims under various state laws.

Having completed a three-year discovery process involving the exchange of millions of pages of documents, the depositions of nearly every EPP class representative, the depositions of over 100 third-party auto dealers, and the depositions of more than a dozen current and former employees of Defendants, the EPPs ultimately settled their claims in full with each of the four

---

[2] *See also* EPP Second Am. Compl. at ¶ 96 ("An owner of a vehicle may also indirectly purchase ***for replacement*** one or more Anti-Vibration Rubber Part(s) from the Defendants when repairing a damaged vehicle or where one or more of the vehicle's Anti-Vibration Rubber Part(s) are defective." (emphasis added)); *id.* at ¶ 156 (defining a class to include purchasers who "indirectly purchased one or more Anti-Vibration Rubber Part(s) as a ***replacement part***, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant or any co-conspirator of the Defendants." (emphasis added)).

*AVRP* Defendants for a total of $81.5 million. In exchange, each settlement agreement "completely released, acquitted, and forever discharged" each of the Defendants "from any and all claims, demands, actions, suits, causes of action" that the "Releasors, or any of them, ever had, now has, or hereafter can, shall or may ever have . . . in any way arising out of . . . or relating in any way" to Defendants' alleged conspiracy. Ex. A at ¶ 23 (Bridgestone Settlement Agreement); *accord* Ex. B at ¶ 21 (Tokai Settlement Agreement); Ex. C at ¶ 22 (Yamashita Settlement Agreement); Ex. D at ¶ 23 (Toyo Settlement Agreement).

Each settlement agreement further defined "Releasors" as any named class representative and any member of the settlement class, and the parties agreed on the following definition of the settlement class, which was certified by this Court following its review and approval of each settlement:

> All persons and entities that, from March 1, 1996 through the Execution Date, purchased or leased a new Vehicle in the United States not for resale, which included one or more Anti-Vibration Rubber Part(s) as a component part, or indirectly purchased one or more Anti-Vibration Rubber Part(s) **as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant**.

Ex. A at ¶¶ 11–12 (Bridgestone Settlement Agreement) (emphasis added); *accord* Ex. B at ¶¶ 10, 13 (Tokai Settlement Agreement); Ex. C at ¶¶ 10, 13 (Yamashita Settlement Agreement); Ex. D at ¶¶ 10, 12 (Toyo Settlement Agreement). Because the EPPs could only assert indirect purchaser claims, any person or entity "who purchased Anti-Vibration Rubber Parts directly or for resale" was excluded from the proposed settlement class and not bound by the release. Ex. A at ¶ 12 (Bridgestone Settlement Agreement); *accord* Ex. B at ¶ 13 (Tokai Settlement Agreement); Ex. C at ¶ 13 (Yamashita Settlement Agreement); Ex. D at ¶ 12 (Toyo Settlement Agreement). In other words, this settlement agreement had no effect on the OEMs and Tier 1 suppliers.

This Court subsequently approved each of these settlements. *See* ECF No. 209 (Round II Order Approving Tokai Settlement); ECF No. 259 (Round III Order Approving Bridgestone, Yamashita, and Toyo Settlements). In doing so, this Court certified the proposed settlement classes according to the definition agreed to by the parties in their settlement agreements. As part of its approval process, this Court approved the notice plan proposed by EPPs. This plan involved a widespread nationwide notice procedure in popular publications such as the *Wall Street Journal* and *Automotive News*, as well as online notice using popular social media platforms such as Facebook.

This Court ruled that this notice procedure was "the best notice practicable" and "satisfied both due process and Rule 23(e)(1), in that it adequately informed members of the Settlement Classes of the nature of the pending actions, the terms of the [ ] Settlements, and how to proceed to get more information." ECF No. 209 at 17–18 (Round II Order Approving Tokai Settlement); *accord* ECF No. 259 at 17 (Round III Order Approving Bridgestone, Yamashita, and Toyo Settlements). This Court also ruled that this notice procedure "explained how to object to the settlements and how to request exclusion." ECF No. 209 at 17 (Round II Order Approving Tokai Settlement); ECF No. 259 at 17 (Round III Order Approving Bridgestone, Yamashita, and Toyo Settlements).

## II.     THIS COURT'S FINAL JUDGMENT ENJOINING ALL OTHER ACTIONS

Following final approval of these settlements, the Court entered its final judgment under Rule 54(b) and dismissed each of the Defendants with prejudice. *See* ECF No. 257 (Bridgestone Final Judgment); ECF No. 258 (Yamashita Final Judgment) ECF No. 216 (Tokai Final Judgment); ECF No. 260 (Toyo Final Judgment). In addition to ordering that its judgments constituted a final adjudication of the merits of this case, this Court reaffirmed its approval of the

terms of the parties' settlements, notice procedures, and releases, and it recognized that each Defendant had paid the full settlement amount into the approved escrow account.

Importantly, to give full effect to the terms of the parties' settlement, this Court ordered that all members of the settlement classes were permanently enjoined from pursuing any further claims against Defendants arising from the alleged conduct:

> All persons and entities who are Releasors are barred and enjoined from commencing, prosecuting, or continuing in an individual or representative or derivative capacity, against the [Defendants], in this or any other jurisdiction, any and all claims, causes of action or lawsuits, which they had, have, or in the future may have, arising out of or related to any of the Released Claims as defined in the [Settlement] Agreement.

ECF No. 257 at ¶ 7 (Bridgestone Final Judgment); *accord* ECF No. 258 at ¶ 7 (Yamashita Final Judgment); ECF No. 216 at ¶ 7 (Tokai Final Judgment); ECF No. 260 at ¶ 7 (Toyo Final Judgment). This Court further ordered that these injunctions applied to every member of the settlement classes — except GEICO and a single opt-out individual in each case.[3] ECF No. 257 at ¶¶ 12–13 (Bridgestone Final Judgment); *accord* ECF No. 258 at ¶¶ 13–14 (Yamashita Final Judgment); ECF No. 216 at ¶ 12 (Tokai Final Judgment); ECF No. 260 at ¶¶ 12–13 (Toyo Final Judgment). The Releasors did not seek exclusion from the settlement classes.

Accordingly, without any further action from this Court, there is an injunction ***already in place*** that bars any claim against Defendants based on a purchase of replacement AVRPs from a subsidiary of one of the Defendants.

---

[3] Terry Sershion "validly requested exclusion" from Bridgestone, Yamashita, and Toyo's settlement classes. ECF No. 257 at ¶ 12 (Bridgestone Final Judgment); *accord* ECF No. 258 at ¶ 13 (Yamashita Final Judgment); ECF No. 260 at ¶ 12 (Toyo Final Judgment). Willis Jonson "validly requested exclusion" from Tokai's settlement class. ECF No. 216 at ¶ 12 (Tokai Final Judgment).

III.    **THE RELEASORS PURSUE AN ACTION IN DIRECT VIOLATION OF THIS INJUNCTION**

On November 15, 2016, three retail purchasers of replacement AVRPs — Jerry A. Anderson Sr., Laura L. LaRue, and Christopher L. Lee (collectively, the "Releasors") — filed an action against Defendants before this Court. *See Anderson et. al. v. Bridgestone et. al.*, 2:16-cv-14057-MOB-MKM. Styled as a "direct purchaser" putative class action, this suit was consolidated into the *AVRP* litigation and assigned a direct purchaser docket number. *See* 2:13-cv-00801-MOB-MKM.

While the Releasors purported to represent a putative class of all direct purchasers — including OEMs, which purchased millions of AVRPs from Defendants based on a complex, multi-year procurement process — their individual claims were virtually identical to those asserted by the EPPs. First and foremost, just like the EPPs, the Releasors acknowledged in their complaint that AVRPs are sold as ***replacement parts*** that are "installed in motor vehicles to replace worn out, defective, or damaged Anti-Vibration Rubber Parts." DPP Compl. ¶ 31. The Releasors further alleged that they purchased these replacement AVRPs "directly from an entity of which one of the Defendants is the ultimate parent," rather than directly from any of the Defendants themselves. *Id.* at ¶¶ 11–13. In oral argument before this Court, counsel for Releasors elaborated on the nature of their purchase, noting that they purchased their AVRPs as replacement parts from repair stores as part of their car repair process:

> [Repair stores] will sell [AVRPs] and install them in your car for you with a labor charge and a parts charge. We have all been there, we have all seen it. And all we are saying is the parts charge was inflated as part of this conspiracy, that's all this is about.

Ex. E at 73:07–12 (Hr'g Tr.).

The identity between the Releasors' claims and the EPPs' claims does not stop there. Rather, entire sections of the Releasors' complaint were copied from the EPP complaint,

including allegations regarding the alleged price fixing conspiracy in Japan and DOJ investigation, the AVRP manufacturing process, and the vehicle manufacturing process. *Compare* DPP Compl. ¶¶ 1–3 *with* EPP Second Am. Compl. ¶¶ 1–10 (overlapping allegations about the "nature of the case"); *compare* DPP Compl. ¶¶ 14–15, 17–27 *with* EPP Second Am. Compl. ¶¶ 74–90 (overlapping allegations about the identity of Defendants); *compare* DPP Compl. ¶¶ 31–34, 36 *with* EPP Second Am. Compl. ¶¶ 91–95 (overlapping allegations about the AVRP manufacturing process); *compare* DPP Compl. ¶¶ 39–42 *with* EPP Second Am. Compl. ¶¶ 97–103 (overlapping allegations about the AVRP market); *compare* DPP Compl. ¶¶ 44–47, 66–72, 74–75 *with* EPP Second Am. Compl. ¶¶ 110–11, 118–32 (overlapping allegations about participation in the conspiracy and the DOJ investigation). Unlike the EPPs, who at least alleged that they purchased AVRPs manufactured by Defendants, the Releasors did not allege that the AVRPs they purchased were made by Defendants. Rather, their sole allegation was that they purchased AVRPs from a Defendant-owned subsidiary, with no allegations about how that subsidiary acquired its AVRPs or who manufactured the AVRPs sold by the subsidiary.

Defendants moved to dismiss the Releasors' complaint, arguing that this Court lacked Article III jurisdiction to hear the case because the Releasors neither pled nor proved constitutional standing. Defendants also challenged the Releasors' reliance on the "ownership and control" exception to *Illinois Brick*, arguing that the exception was inapplicable and that, as indirect purchasers, they lacked antitrust standing to sue under the Sherman Act.

Defendants' motion, filed in April 2017, was fully submitted before this Court had entered final approval of any of the EPP settlements. Therefore, at the time Defendants filed their motion, this Court's injunctions were not yet in place and their claims were not yet barred.

This Court denied Defendants' motion in March 2018, ruling that the Releasors had sufficient standing at the pleading stage. Following Defendants' petition for interlocutory appeal,

this Court agreed that its denial of Defendants' motion to dismiss was an "extraordinary" order under 28 U.S.C. § 1292(b) and urged the Sixth Circuit to review its order "before continuing this litigation, which has proven to be lengthy and expensive in other component part cases." Order at 6. The Sixth Circuit ultimately declined to exercise their discretionary jurisdiction over this case.

Importantly, throughout this process, this Court had in place a full stay on all discovery. As a result, the Releasors' case has not proceeded beyond the pleading stage and has had no activity beyond the motion to dismiss. Immediately following the Sixth Circuit's order, however, the Releasors served a discovery request on Defendants. Ex. F (counsel correspondence). Defendants informed the Releasors that during the period after the motion to dismiss was filed, this Court issued final judgments approving the EPP settlement agreements with all four *AVRP* Defendants and enjoined these claims from proceeding any further. *Id.* Defendants further informed the Releasors that the serving of this discovery request was in violation of this Court's injunctions and requested that the Releasors voluntarily dismiss these barred claims. *Id.* The Releasors declined to do so, and this motion followed.

## JURISDICTION

This Court fully incorporated the parties' settlement agreements into its final judgments and expressly retained its "exclusive jurisdiction" over both the enforcement of the final judgments and the settlement agreements. ECF No. 257 at ¶ 11 (Bridgestone Final Judgment); ECF No. 258 at ¶ 12 (Yamashita Final Judgment); ECF No. 216 at ¶ 11 (Tokai Final Judgment); ECF No. 260 at ¶ 11 (Toyo Final Judgment). This Court, therefore, has jurisdiction to enforce its injunctions against the Releasors. *See McAlpin v. Lexington 76 Auto Truck Stop, Inc.*, 229 F.3d 491, 504 (6th Cir. 2000) ("[T]he district court always has jurisdiction to enforce its own orders." (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380–81 (1994))); *see also CFE*

*Racing Prod., Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 598 (6th Cir. 2015) ("A court's ability to issue injunctions, and then enforce those injunctions with a finding of contempt, springs from the court's inherent equitable powers." (quotation omitted)).

## ARGUMENT

## I.    THE RELEASORS' CONTINUATION OF THEIR ACTION DIRECTLY VIOLATES THIS COURT'S INJUNCTIONS

Based on the allegations contained in their own pleadings, the Releasors are clearly members of the EPPs' settlement classes. These settlement classes included every purchaser in the United States who purchased AVRPs as "a replacement part, which were manufactured or ***sold*** by a Defendant, any current or former ***subsidiary of a Defendant***, or any co-conspirator of a Defendant." Ex. A at ¶¶ 11–12 (Bridgestone Settlement Agreement) (emphasis added); *accord* Ex. B at ¶¶ 10, 13 (Tokai Settlement Agreement); Ex. C at ¶¶ 10, 13 (Yamashita Settlement Agreement); Ex. D at ¶¶ 10, 12 (Toyo Settlement Agreement).

The Releasors fall squarely within this class definition because they allege that they purchased replacement AVRPs that were sold to them by a subsidiary of a Defendant. *See* DPP Compl. at ¶¶ 11–13 (alleging that their purchase of replacement AVRPs was "from an entity of which one of the Defendants is the ultimate parent"). Beyond the crystal clarity of their pleadings, counsel for Releasors argued at length that their clients were sold AVRPs by a subsidiary of the Bridgestone Defendants. *See* Ex. E at 66:21–25 (Hr'g Tr.) ("Firestone owns a company that owns a company that owns the tire stores. There's nobody else involved. Bridgestone, Bridgestone, Bridgestone, Firestone, it is that simple. It's not complicated, there aren't other parties involved."). Accordingly, there can be no dispute that the Releasors are members of these settlement classes.

Nor can there be any dispute that the Releasors never opted out — or even attempted to opt out — of these classes. This Court has ruled that each putative class member received

adequate notice prior to the certification of each of the four *AVRP* settlement classes. In addition to these court-approved notice procedures, the Releasors are represented by the same counsel that represents class representatives in dozens of other direct purchaser actions in the *Auto Parts* litigation. Therefore, like every other class member who did not opt out of the settlement classes, the Releasors' claims were finally and dispositively adjudicated by final judgments, in which this Court approved the parties' settlements, dismissed the case with prejudice, and enjoined any further litigation.

Yet the Releasors attempt to proceed with their claims as if these injunctions simply did not exist. These injunctions expressly "barred and enjoined" the Releasors from "commencing, prosecuting, or ***continuing***" to pursue "any and all claims" against Defendants "arising out of or related to any of the Released Claims." ECF No. 257 at ¶ 7 (Bridgestone Final Judgment) (emphasis added); *accord* ECF No. 258 at ¶ 7 (Yamashita Final Judgment); ECF No. 216 at ¶ 7 (Tokai Final Judgment); ECF No. 260 at ¶ 7 (Toyo Final Judgment). While these injunctions were not yet in place at the time the Releasors filed their action or at the time Defendants moved to dismiss their action, there is no dispute that they are in place now, and the Releasors have not moved under Rule 60(b) for any relief from these final judgments. Rather, they simply served discovery requests despite being enjoined from "continuing" to pursue claims identical to those released by the EPP settlement classes. This Court should, therefore, enforce its injunctions to bar the Releasors from any attempt to relitigate their settled claims.

## II.    THE RELEASORS CANNOT AVOID THIS INJUNCTION BY CLAIMING TO BE "DIRECT PURCHASERS"

Expressly excluded from both the EPPs' settlement agreements and the Court's injunctions are direct purchaser claims. But this exclusion is of no benefit to the Releasors because they never alleged that they directly purchased their AVRPs from any Defendant. On the contrary, the Releasors specifically alleged that they indirectly purchased their AVRPs from

entities owned or controlled by Defendants — not from Defendants themselves. As a result, the Releasors cannot be direct purchasers.

This was made indisputably clear by the Supreme Court's recent decision in *Apple Inc. v. Pepper*, 139 S. Ct. 1514 (2019). In *Apple*, the Supreme Court rejected an attempt to expand the meaning of a "direct purchaser" and instead took the opportunity to repeatedly reaffirm the "simple enough" rule that only those who purchase directly from the antitrust violator can be direct purchasers:

- "The plaintiffs purchased apps ***directly*** from Apple and therefore are direct purchasers under *Illinois Brick*." *Id.* at 1519 (emphasis added).

- "It is undisputed that the iPhone owners ***bought the apps directly*** from Apple. Therefore, under *Illinois Brick*, the iPhone owners were direct purchasers who may sue Apple for alleged monopolization." *Id.* at 1520 (emphasis added).

- "Applying §4, we have consistently stated that the ***immediate buyers*** from the alleged antitrust violators may maintain a suit against the antitrust violators." *Id.* (citation omitted) (emphasis added).

- "At the same time, incorporating principles of proximate cause into §4, we have ruled that *indirect* purchasers who are ***two or more steps removed*** from the violator in a distribution chain may not sue." *Id.* (emphasis added).

- "The bright-line rule of *Illinois Brick*, as articulated in that case and as we reiterated in *UtiliCorp*, means that ***indirect purchasers who are two or more steps removed from the antitrust violator in a distribution chain may not sue***. By contrast, direct purchasers — that is, those who are the ***immediate buyers*** from the alleged antitrust violators — may sue." *Id.* at 1521 (internal quotation and citation omitted) (emphasis added).

That the Releasors label themselves as direct purchasers and seek to represent a putative class of direct purchasers is of no consequence. As Defendants made clear in their motion to dismiss, the Releasors' case is the only case within the entire *Auto Parts* litigation in which the "direct purchaser" named representatives were retail purchasers of replacement parts through subsidiaries of a Defendant where the subsidiary is not named as a defendant, not alleged to be a participant in the conspiracy, and not alleged to be an antitrust violator. In every other *Auto Parts*

case, the named plaintiff direct purchasers were corporations that purchased the parts directly from the Defendant that was alleged to be an antitrust violator. The palpable inadequacy of these *AVRP* named class representatives as direct purchasers combined with the highly suspicious timing of the complaint's filing — it was filed on the final day of the statute of limitations — led Defendants to challenge these retail purchasers as shill "placeholders" to toll the limitation period.

At oral argument on the motion to dismiss the Releasors' claims, counsel for the Releasors conceded that these three retail purchasers were used as plaintiffs only because counsel were unable to "find someone who directly purchased from one of the participants" in the prior four years. Ex. E at 80:04–05 (H'rg Tr.). Because counsel were unable to find any ***actual*** direct purchaser, the complaint was filed using the three Releasors, each of whom allegedly purchased replacement AVRPs from subsidiaries of a Defendant and had to rely on the "ownership and control" exception to the *Illinois Brick* rule to bring their indirect purchaser claims under the Sherman Act.

The Releasors' need to rely on an "exception" to *Illinois Brick* itself proves that the Releasors are not direct purchasers because *Illinois Brick* does not apply to direct purchasers: the "ownership or control exception" is — by its very name — an ***exception*** to the rule barring indirect purchasers and is potentially available to a plaintiff only if that plaintiff is an indirect purchaser. Even if the "ownership and control" exception were to ultimately apply to the Releasors — and the Sixth Circuit has never once found that it applied in the 41 years since *Illinois Brick* — it would not convert the Releasors' indirect purchaser claims into direct purchaser claims. It would simply permit the Releasors to bring their indirect purchaser claims under the Sherman Act. The possibility that an indirect purchaser's claims may qualify for a narrow exception to the *Illinois Brick* bar on indirect purchaser claims does not transform an

indirect purchaser into a direct purchaser. The Releasors cannot, therefore, avoid complying with this Court's injunctions on that basis.

## **CONCLUSION**

Accordingly, this Court should enforce its final judgments entered in the EPP case and enjoin the Releasors from continuing to litigate their claims against Defendants. Moreover, this Court should leave the existing discovery stay in place pending its order on this motion.

Respectfully submitted,

June 4, 2019                                     */s/ Steven A. Reiss*

Steven A. Reiss
Adam C. Hemlock
David Fitzmaurice
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
steven.reiss@weil.com
adam.hemlock@weil.com
david.fitzmaurice@weil.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2019, I caused the Motion To Enforce This Court's Final Judgments and supporting Memorandum of Law and exhibits to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Steven A. Reiss*
Steven A. Reiss
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
steven.reiss@weil.com

*Counsel for Bridgestone Corporation and Bridgestone APM Company*