**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| _____ | : | |
| In Re: AUTOMOTIVE PARTS | : | Master File No. 12-md-02311 |
| ANTITRUST LITIGATION | : | Hon. Marianne O. Battani |
| _____ | : | |
| | : | |
| In Re: ANTI-VIBRATIONAL RUBBER | : | 2:13-cv-00803-MOB-MKM |
| PARTS | : | |
| _____ | : | |
| | : | |
| THIS DOCUMENT RELATES TO: | : | **Oral Argument Requested** |
| END PAYOR ACTIONS | : | |
| _____ | : | |

**DIRECT PURCHASER PLAINTIFFS'**
**RESPONSE TO DEFENDANTS' MOTION**
**TO ENFORCE THIS COURT'S FINAL JUDGMENTS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ iii

STATEMENT OF ISSUES PRESENTED..................................................................................... v

STATEMENT OF CONTROLLING  OR MOST APPROPRIATE AUTHORITIES ................ vi

INTRODUCTION ......................................................................................................................... 1

ARGUMENT ................................................................................................................................. 4

CONCLUSION............................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997) ......................................................................................... 9

*Apple Inc. v. Pepper*,
  139 S.Ct. 1514 (2019) .................................................................................... 8, 9

*California v. ARC Am. Corp.*,
  490 U.S. 93, 109 S. Ct. 1661, 104 L. Ed. 2d 86 (1989) ................................... 7

*City of Cleveland v. Cleveland Elec. Illuminating Co.*,
  538 F. Supp. 1320 (N.D. Ohio 1980) ............................................................... 8

*Copperweld Corp. v. Independence Tube Corp.*,
  467 U.S. 752 (1984) ......................................................................................... 7

*Illinois Brick Co. v. Illinois*,
  431 U.S. 720 (1977) ..................................................................................... 4, 5

*In re Brand Name Prescription Drugs Antitrust Litig.*,
  171 F.R.D. 213 (N.D. Ill. 1997) .................................................................. 4, 5

*In re Chicken Antitrust Litigation*,
  560 F. Supp. 943 (N.D. Ga. 1979) ................................................................... 6

*In re Mercedes-Benz Anti-Tr. Litig.*,
  157 F. Supp. 2d 355 (D.N.J. 2001) ................................................................. 6

*In re Mid-Atl. Toyota Antitrust Litig.*,
  516 F. Supp. 1287 (D. Md. 1981) ................................................................. 5, 7

*In re Optical Disk Drive Antitrust Litig.*,
  2012 WL 1366718 (N.D. Cal. Apr. 19, 2012) ................................................. 7

*In re Packaged Ice Antitrust Litig.*,
  2012 WL 5493613 (E.D. Mich. Nov. 13, 2012) .............................................. 6

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  827 F.3d 223 (2d Cir. 2016).............................................................................. 9

*In re Sugar Indus. Antitrust Litigation*,
  579 F.2d 13 (3rd Cir. 1978)............................................................................... 6

*In re Vitamin C Antitrust Litig.*,
  279 F.R.D. 90 (E.D.N.Y. 2012) ....................................................................... 6

*In re: Domestic Drywall Antitrust Litig.*,
  2016 WL 3769680 (E.D. Pa. July 13, 2016)................................................... 6

*Jewish Hosp. Ass'n of Louisville, Inc. v Stewart Mech. Enter.*,
  628 F.2d 971 (6th Cir. 1980)............................................................................ 8

*Kansas v. UtiliCorp United Inc.*,
  497 U.S. 199, 110 S.Ct. 2807, 111 L.Ed.2d 169 (1990) ................................. 9

*Kentucky v. Marathon Petrol. Co.*, LP,
  2016 WL 7031904 (W.D. Ky. Dec. 1, 2016).................................................... 8

*Laumann v. Nat'l Hockey League*,
  907 F. Supp. 2d 465 (S.D.N.Y. 2012)............................................................. 5

*Learning Collective, Inc. v. Daimler-Benz,*
  1980 WL 1943 (D. Md. Aug. 28, 1980)...........................................................6
*Mid-West Paper Products Co. v. Cont'l Group, Inc.,*
  596 F.2d 573 (3d Cir. 1979)........................................................................6
*Ortiz v. Fireboard Corp.,*
  527 U.S. 815 (1999)....................................................................................9
*Warren Gen. Hosp. v. Amgen Inc.,*
  643 F.3d 77 (3d Cir. 2011)..........................................................................7

**Statutes**

Clayton Act, 15 U.S.C. &#167; 4 ...................................................... 3, 6, 7
Sherman Act, 15 U.S.C. &#167; 1 ..................................................... 2, 3, 7

**Rules**

Fed. R. Civ. P. 23 .......................................................................................9
Fed. R. Civ. P. 23(a)(4)...............................................................................9

## STATEMENT OF ISSUES PRESENTED

Even though this Court previously rejected Defendants' argument that Direct Purchaser Plaintiffs are indirect purchasers who lack standing to pursue federal antitrust claims, and even though there has been no change in the relevant facts, should Defendants be able to employ that same argument to obtain dismissal of the DPP actions based on the release of end-payor claims?

Direct Purchaser Plaintiffs' Answer: No

## STATEMENT OF CONTROLLING
## OR MOST APPROPRIATE AUTHORITIES

Clayton Act, 15 U.S.C. § 4

Sherman Act, 15 U.S.C. § 1

*Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977)

## INTRODUCTION

Defendants' Motion, brought in the indirect automobile purchaser "end-payor" ("EPP") action to "enforce" a release in the EPP case, is nothing more than an attempt through sharp practices and subterfuge to end-run the Court's prior ruling that rejected the argument that the Direct Purchaser Plaintiffs ("DPPs") are actually indirect purchasers without standing to sue for damages under the federal antitrust statutes. This gamesmanship should be rejected and their motion denied.

Defendants argue that because the DPPs purchased price-fixed parts from subsidiaries of the Defendants, DPPs are indirect purchasers, whose claims were released by the EPP settlement agreements. 2:13-cv-00803, Doc. No. 265, PageID 9842. The hollowness of Defendants' position can be discerned by simply reading the language in the EPP AVRP settlement agreements (and for that matter all of the other EPP settlement agreements). The settlements define the settlement class to *include* "[a]ll persons and entities that … purchased or leased a new Vehicle in the United States not for resale, which included one or more Anti-Vibration Rubber Part(s) as a component part, or *indirectly purchased* one or more Anti-Vibration Rubber Part(s) **as a** *replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant ….*" *Id.* (emphases added). Further, the settlements expressly *exclude* claims brought by direct purchasers: "excluded from the Settlement Class are … persons who purchased Anti-Vibration Rubber Parts directly or for resale." (Ex. 1).

The release language in the EPP settlements similarly specified that the class members were releasing all claims "in any way arising out of or relating in any way to (i) *any conduct alleged in the Complaints*, and (ii) any act or omission of the Releasees (or any of them) concerning Relevant Parts, including but not limited to any conduct and causes of action *alleged or asserted*

1

*or that could have been alleged or asserted*, in any class action or other complaint *filed in the Actions* (the "Released Claims"), provided however, that nothing herein shall release: (1) any claims *made by direct purchasers* of Relevant Parts …." *Id.* (emphasis added).[1]

Defendants do not have the right to compromise DPPs' claims through the EPP lawsuit. DPPs were not members of the end-payor settlement class. The EPPs did not have standing to pursue federal antitrust claims for damages. The EPP case was limited, by definition, to indirect purchasers. The EPP complaint did only allege (and could only allege) claims for which EPPs had standing and did not allege the claims for which they did not have standing. *See* 2:13-cv-00803 Doc. No. 20. The only relief EPPs sought under the Sherman Act was injunctive. *Id.* The only claims for damages were for violations of state law for automobile purchasers and lessors. *Id.* ¶¶ 199-210. DPPs were not informed of and took no part in the settlement negotiations; those were between Defendants and the EPPs exclusively. DPPs did not give the EPPs proxy to negotiate or release federal direct purchaser claims. DPPs did not agree to any of the settlement terms. DPPs had no hand in drafting the settlement agreements. DPPs did not somehow agree to release their claims even though they are not (as this Court found) indirect purchasers under federal law. If Defendants' tactics were deemed acceptable, class action defendants would be incentivized to enter into collusive settlements, supposedly releasing all claims that could ever be brought for any reason by anybody, whether or not they were members of the class represented by the plaintiffs in the action being settled.

The fact that Defendants' argument is meritless can also be discerned from the machinations employed to hide the issue from DPPs. Even though the DPP lawsuit is, and was at

---

[1] The Motions for Final Approval were also clear that the "release does not include … any claims made by direct purchasers of Relevant Parts."

the time of the EPP settlements, being actively litigated, counsel for Defendants never asked counsel for DPPs whether they would agree to release their claims or whether they would consent to be included in the EPP settlement. Nor did Defendants file any sort of notice in the DPP case stating that they had purportedly settled the DPP claims. Defendants did not even seek concurrence from DPPs (the parties whose concurrence was needed) or otherwise inform DPPs of the pendency of the instant Motion. Instead, the Motion was filed in the EPP cases, with no copy being served on DPPs. Defendants did not file it in the DPP case.[2] The fact that DPPs filed a dispositive motion was only addressed because counsel for DPPs saw that it had been filed in the EPP docket the day before the most recent Status Conference. Only then, after the cat was out of the bag, did Defendants provide a "courtesy copy" of the Motion to DPPs.

In any event, Defendants' arguments fail on the merits. According to Defendants, the direct purchaser class representatives are covered by the settlement and the releases, because they are actually indirect purchasers. This is largely a re-configured re-hash of the losing arguments made in the Motions to Dismiss in the Direct Purchaser cases, 2:13-cv-00801 and 2:16-cv-14057. Defendants argued that the named DPPs, Jerry A. Anderson Sr., Laura L. LaRue and Christopher L. Lee, were indirect purchasers because they purchased from Defendants' subsidiaries, and thus lacked standing under the Sherman and Clayton Acts. The reason the Defendants claim that DPPs are indirect purchasers? The same reason offered in the Motion to Dismiss: the parts were purchased from Defendants' subsidiaries. The argument is wrong, was rejected with respect to the Motion to Dismiss (with the 6th Circuit refusing to hear Defendants' proposed interlocutory

---

[2] This is not the first time that Defendants have deployed less than straightforward tactics when settling with the EPPs. Previously, Defendants tried to compromise GEICO's rights by filing a similar document (like here only in the EPP case, not in the GEICO case) asserting that GEICO was bound by a settlement with the EPPs. *See*, *e.g.*, Doc. No. 611, 2:12-cv-00103.

appeal) and has been rejected time and again by numerous courts. The law is well-settled; *Illinois Brick* and its progeny inarguably treat purchases from subsidiaries of price fixers as purchases from the price fixer itself. *See*, *e.g.*, *See*, *e.g.*, *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977). A subsidiary of a price-fixer is not deemed a direct purchaser. Treating a subsidiary as the first direct purchaser would enable price-fixers to escape federal antitrust liability.[3]

## ARGUMENT

Defendants acknowledge that direct purchaser claims are "expressly excluded" from the EPP settlement agreements and related injunctions. (2:13-cv-00803, ECF No. 265, PageID.9843-44 ("Motion to Enforce"). Defendants claim, however, that DPPs are not covered by the exclusion, because DPPs "alleged that they indirectly purchased their AVRPs from entities owned or controlled by Defendants — not from Defendants themselves." (Id. at 9844). According to Defendants, because the purchases were from subsidiaries of the Defendants the DPP class representatives "cannot be direct purchasers." *Id.*

This is the same argument made in the Motion to Dismiss. In its Opinion & Order Denying the Motion to Dismiss (the "Opinion & Order"), this Court noted that "Plaintiffs allege that they did purchaser commodity AVRPs during the Class Period **directly** from an entity within Defendants' vertically-integrated corporate families, at a supracompetitive price, as a result of

---

[3] At the very least, if the Court deems that the DPP class representatives are also class members in the EPP case, justice would be served by allowing them to opt out of the EPP settlement class (as this Court did with respect to claims brought by GEICO, notwithstanding arguments that GEICO had notice of earlier settlements which purportedly released the company's claims). Order Denying Defendants' Motion, Doc. No. 254, 2:13-cv-00803 (Oct. 5, 2018). Certainly, as was the case with GEICO, the fact that DPPs have continued to diligently pursue their claims demonstrates they had no intention to be bound by settlements in the EPP case. *See*, *e.g.*, *In re Brand Name Prescription Drugs Antitrust Litig.*, 171 F.R.D. 213, 216 (N.D. Ill. 1997) ("The clearest evidence of a desire to pursue its own litigation against the defendants is the filing of its case against the same [] defendants.")

Defendants' conspiracy." Opinion & Order, 2:13-cv-00801, Doc. No. 20, PgID 219-20 (emphasis added). Although Defendants asserted that they were not directly involved in the sales to the DPPs, the DPPs had alleged that their purchases were from entities controlled by Defendants. Thus, DPPs had standing to pursue their federal antitrust claims. *Id*.

Nothing has changed since the Motion to Dismiss was denied. Defendants' argument continues to be deficient. In the Opinion & Order, this Court stated that the "Supreme Court expressly recognized an exception to the *Illinois Brick* rule in those situations 'where the direct purchaser is owned or controlled by its customer,' and courts have 'expanded [the exception] to include instances where the defendant owns or controls the intermediary that sold the goods to the indirect-purchaser plaintiff.'" *Id.* PgID 224 (citing *Laumann v. Nat'l Hockey League*, 907 F. Supp. 2d 465, 481 (S.D.N.Y. 2012)). Because DPPs had properly alleged purchases from entities controlled by Defendants, the Motion to Dismiss was denied.

The Court's analysis comports with the case law on point. In *Illinois Brick*, the Supreme Court determined that since an antitrust violator could not defend against a claim by employing a pass-on defense (asserting that the direct purchaser does not have standing because the purchaser passed on the inflated price to the consumer), a purchaser cannot use pass-on offensively. Only the direct purchaser has standing to pursue the federal antitrust claims. The Court, however, observed that "[a]nother situation in which market forces have been superseded and the pass-on defense might be permitted is where the direct purchaser is owned or controlled by its customer." *Illinois Brick* at 736 n. 16. Since then, "the unanimous view is that the exception applies not only where the direct purchaser is owned or controlled by its customer, but also where it is owned or controlled by its supplier." *In re Mid-Atl. Toyota Antitrust Litig.*, 516 F. Supp. 1287, 1292 (D. Md. 1981).

A purchaser from a wholly owned subsidiary of a corporate parent qualifies, "as a matter of antitrust law," as a direct purchaser from the corporate parent. *See In re: Domestic Drywall Antitrust Litig.*, 2016 WL 3769680, at *5 (E.D. Pa. July 13, 2016). Certain plaintiffs in *Domestic Drywall* "purchased drywall directly from [a subsidiary of a defendant]." *Id*. at *3. Rejecting the argument that this made the plaintiffs indirect purchasers, the court concluded that the subsidiary was wholly-owned, and the allegations of the subsidiary "must be considered as allegations against" the parent. *Id*. at *4. The court explained:

> In this case, the fact that [the subsidiary] is a wholly-owned subsidiary of [parent] requires the Court to conclude that the [subsidiary] Purchasers, because they allege they purchased from [subsidiary], were also, as a matter of antitrust law, purchasing from [parent]. Thus … the [subsidiary] Purchasers *qualify as direct purchasers*. Therefore, there is no need to consider any of the Illinois Brick exceptions.

*Id*. at *5 (emphasis added). This same result is repeated time and again. *See, e.g.*, *Mid-West Paper Products Co. v. Cont'l Group, Inc*., 596 F.2d 573, 589 (3d Cir. 1979) ("only [plaintiffs] who purchased packaging products *directly from the manufacturer (or its subsidiary)* could raise a Clayton Act treble-damages claim against that manufacturer.") (emphasis added); *In re Sugar Indus. Antitrust Litigation*, 579 F.2d 13 (3rd Cir. 1978); *In re Mercedes-Benz Anti-Tr. Litig*., 157 F. Supp. 2d 355, 365 (D.N.J. 2001) *Tech. Learning Collective, Inc. v. Daimler-Benz AG*, 1980 WL 1943, at *15 (D. Md. Aug. 28, 1980) ("Because the 'control' exception to *Illinois Brick* applies to parent-subsidiary relationships, *these class members are direct purchasers* from the defendants.") (emphasis added); *In re Packaged Ice Antitrust Litig*., 2012 WL 5493613, at *10 (E.D. Mich. Nov. 13, 2012) (certifying class of "[a]ll purchasers … who purchased Packaged Ice in the United States *directly from* any of the Defendants *or their subsidiaries* or affiliates ….."); *In re Vitamin C Antitrust Litig*., 279 F.R.D. 90, 101 (E.D.N.Y. 2012); *In re Chicken Antitrust Litigation*, 560 F. Supp. 943, 951 n. 23 (N.D. Ga. 1979).

There is no merit to Defendants' semantic argument that the ownership or control exception to *Illinois Brick* actually means that the purchaser from a subsidiary is deemed an "indirect purchaser" under federal law, albeit one who may bring their damages claims under the Sherman Act. Defendants do not cite a single case in support of the proposition. The letter of the law, and *Illinois Brick* and its progeny, make clear that only direct purchasers may sue under the federal antitrust statutes. *See*, *e.g.*, *California v. ARC Am. Corp.*, 490 U.S. 93, 100, 103, 109 S. Ct. 1661, 1664, 1666, 104 L. Ed. 2d 86 (1989) (Supreme Court stating that "[u]nder federal law, **n**o *indirect purchaser* is entitled to sue for damages for a Sherman Act violation … [and] § 4 of the Clayton Act authorizes *only direct purchasers* to recover monopoly overcharges under federal law.") (emphases added). Indeed, the analysis of whether the exception applies, is actually an analysis of whether "direct purchaser status is appropriate." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 90–91 (3d Cir. 2011). For purposes of antitrust law, a sale by a subsidiary counts as a sale by the parent. *See*, *e.g.*, virtually all of the cases cited above and *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 771 (1984) ("[T]he coordinated activity of a parent and its wholly owned subsidiary must be viewed as that of a single entity for purposes of § 1 of the Sherman Act."). The subsidiary is simply disregarded. The legally relevant direct purchaser is the first purchaser with antitrust standing.[4]

---

[4] District courts that were asked to decide whether a purchaser from a subsidiary is a "direct purchaser" or an "indirect purchaser with special standing," have found there was no point in the exercise. *See*, *e.g.*, *In re Optical Disk Drive Antitrust Litig.*, No. 3:10-MD-2143 RS, 2012 WL 1366718, at *5 (N.D. Cal. Apr. 19, 2012) (describing this issue as "one of nomenclature rather than substance"); *In re Mid-Atl. Toyota Antitrust Litig.*, 516 F. Supp. 1287, 1295 (D. Md. 1981) ("[t]his [c]ourt does not consider it fruitful to undertake an overly semantic analysis of the . . . exception; what is useful instead is to review the allegations in light of the policy objectives underlying *Illinois Brick*. If those policy considerations argue for application of the *Illinois Brick* rule it will be applied, if they do not, it will not.").

Defendants also repeatedly assert that the control exception is "narrow" and that "the Sixth Circuit has never once found that it applied." Motion to Enforce, PageID 9845. Whether the exception is narrow or not, this Court has already concluded that DPPS' allegations fall within it (*see* Opinion & Order Denying Motion to Dismiss, 2:13-cv-00801, Doc. No. 20) and the 6th Circuit rejected Defendants' request for an interlocutory appeal of the issue. The exception covers precisely the type of conduct alleged in the DPP suit, sales by a subsidiary or a company owned or controlled by the antitrust violator. And, contrary to Defendants' claim, the Sixth Circuit, like every other Circuit, has approved the exception. *See, e.g., Jewish Hosp. Ass'n of Louisville, Inc. v Stewart Mech. Enter.*, 628 F.2d 971, 975 (6th Cir. 1980) ( "we read these citations as evidence that the 'control' exception is limited to relationships involving such functional economic or other unity between the direct purchaser and either the defendant or the indirect purchaser that there effectively has been only one sale ….") (citations omitted); *see also City of Cleveland v. Cleveland Elec. Illuminating Co.*, 538 F. Supp. 1320, 1323 (N.D. Ohio 1980) (noting that *Jewish Hospital* recognized the *Illinois Brick* "control exception."); *Kentucky v. Marathon Petrol. Co.*, LP, No. 3:15-CV-354-DJH, 2016 WL 7031904, at *5 (W.D. Ky. Dec. 1, 2016) ("the Sixth Circuit has made a conclusive ruling" in which it "recognized and applied the control exception from *Illinois Brick.*").[5]

Finally, Defendants rely on *Apple Inc. v. Pepper*, 139 S.Ct. 1514 (2019) to support their proposition that DPPs are actually end-payors. But *Apple* does not support Defendants' proposition, and has no bearing on the "ownership and control" issue. Apple had argued that the purchasers could not sue Apple because the company did not set the price of apps sold on the

---

[5] Whether the Sixth Circuit has had an opportunity to apply the exception is largely irrelevant because the precedent is from the Supreme Court.

Apple-owned Apple Store. There was speculation that the Supreme Court would limit the subsidiary exception, but ultimately the Court emphatically affirmed the doctrine. The Court reaffirmed the "bright-line rule of *Illinois Brick*" that "*indirect purchasers* who are two or more steps removed from the antitrust violator in a distribution chain *may not sue*." *Id.* at 1521. "By contrast, *direct purchasers*—that is, those who are 'the immediate buyers from the alleged antitrust violators'—*may sue*." *Id.* (citing *Kansas v. UtiliCorp United Inc.*, 497 U.S. 199, 207, 110 S.Ct. 2807, 111 L.Ed.2d 169 (1990)). A person who purchases an app from the Apple Store is the direct purchaser. If anything, *Apple* supports DPPs' argument.  As the Supreme Court observed:

> Apple's rule would elevate form (what is the precise arrangement between manufacturers or suppliers and retailers?) over substance (is the consumer paying a higher price because of the monopolistic retailer's actions?). If the retailer's unlawful monopolistic conduct caused a consumer to pay the retailer a higher-than-competitive price, the consumer is entitled to sue the retailer under the antitrust laws. […]

> In sum, Apple's theory would disregard statutory text and precedent, create an unprincipled and economically senseless distinction among monopolistic retailers, and furnish monopolistic retailers with a how-to guide for evasion of the antitrust laws.

*Apple*, 139 S.Ct. at 1523-24. Here, as cautioned against by the *Apple* Court, Defendants not only elevate form over substance, but their theory "would disregard statutory text and precedent," and would furnish monopolists "with a how-to guide for evasion of the antitrust laws." Don't want to face claims brought by purchasers from your subsidiary? Call those purchasers "indirect" and include them in a settlement with unrelated parties.[6]

---

[6] Defendants' position amounts to a clear violation of the Due Process right to adequate representation and would void the settlement. *See, e.g., Ortiz v. Fireboard Corp.*, 527 U.S. 815 (1999) (Where a settling class contains a structural divide where some class members' claims are of a significantly different type and value from others the class cannot be adequately represented within the meaning of Fed. R. Civ. P. 23 and the Due Process Clause if the class representatives only hold one type of claim.); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997). Releases in settlements "that do not comply with Rule 23(a)(4) [adequacy] and the Due Process Clause

## CONCLUSION

For the foregoing reasons, DPPs respectfully request that the Court deny Defendants' Motion to Enforce This Court's Final Judgment.

DATED: July 1, 2019                    Respectfully submitted,


   /s/David H. Fink
David H. Fink (P28235)
Darryl Bressack (P67820)
Nathan J. Fink (P75185)
FINK BRESSACK
38500 Woodward Ave; Suite 350
Bloomfield Hills, MI 48304
Telephone: (248) 971-2500

*Interim Liaison Counsel for the Direct Purchaser Plaintiffs*

| | |
|---|---|
| Steven A. Kanner | Joseph C. Kohn |
| William H. London | William E. Hoese |
| Michael E. Moskovitz | Douglas A. Abrahams |
| FREED KANNER LONDON | KOHN, SWIFT & GRAF, P.C. |
| & MILLEN LLC | 1600 Market Street, Suite 2500 |
| 2201 Waukegan Road, Suite 130 | Philadelphia, PA  19103 |
| Bannockburn, IL  60015 | Telephone: (215) 238-1700 |
| Telephone: (224) 632-4500 | |
| | |
| Gregory P. Hansel | Eugene A. Spector |
| Randall B. Weill | William G. Caldes |
| Michael S. Smith | Jeffrey L. Spector |
| PRETI, FLAHERTY, BELIVEAU | SPECTOR ROSEMAN & KODROFF, P.C. |
| & PACHIOS LLP | Two Commerce Square |
| One City Center, P.O. Box 9546 | 2001 Market Street, Suite 3420 |
| Portland, ME  04112-9546 | Philadelphia, PA  19103 |
| Telephone: (207) 791-3000 | Telephone: (215) 496-0300 |

*Interim Co-Lead Counsel for the Direct Purchaser Plaintiffs*

---

cannot be sustained." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 232 (2d Cir. 2016). There could not be a wider structural divide than the one at bar. The EPP class representatives, and all EPP class members, could not (and did not) pursue damages claims under federal antitrust law.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 1, 2019, I electronically filed the foregoing paper with the Clerk of the court using the ECF system which will send notification of such filing to all counsel of record registered for electronic filing.

FINK BRESSACK

By: /s/Nathan J. Fink
David H. Fink (P28235)
Darryl Bressack (P67820)
Nathan J. Fink (P75185)
38500 Woodward Ave; Suite 350
Bloomfield Hills, MI  48304
Telephone: (248) 971-2500
nfink@finkbressack.com

11