# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | : Master File No. 12-md-02311<br>: Honorable Marianne O. Battani |
| In Re: ANTI-VIBRATIONAL RUBBER PARTS | : 2:13-cv-00803-MOB-MKM |
| THIS DOCUMENT RELATES TO:<br>END PAYOR ACTIONS | : **Oral Argument Requested** |

# REPLY IN SUPPORT OF DEFENDANTS' MOTION
# TO ENFORCE THIS COURT'S FINAL JUDGMENTS

## QUESTION PRESENTED

1. In its final judgments approving the parties' settlements and dismissing this case with prejudice, this Court enjoined all indirect purchasers of Defendants' AVRPs — including those who purchased AVRPs as stand-alone *replacement parts from subsidiaries* of the Defendants — from "commencing, prosecuting, or continuing . . . any and all claims" relating to Defendants' alleged price fixing conspiracy. Here, however, three individuals have sued Defendants based on their alleged purchase of AVRPs as stand-alone *replacement parts from subsidiaries* of the Defendants, in direct violation of this Court's injunctions. Should the Court enforce its injunctions to dismiss these claims?

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

Amended Final Judgment Approving Settlement Agreement Between End-Payor Plaintiffs And Sumitomo Riko And Entering Dismissal With Prejudice As To Sumitomo Riko, ECF No. 216.

Final Judgment Approving Settlement Agreement Between End-Payor Plaintiffs And The Bridgestone Defendants And Entering Dismissal With Prejudice As To The Bridgestone Defendants, ECF No. 257.

Final Judgment Approving Settlement Agreement Between End-Payor Plaintiffs And Yamashita And Entering Dismissal With Prejudice As To Yamashita Defendants, ECF No. 258.

Final Judgment Approving Settlement Agreement Between End-Payor Plaintiffs And The Toyo Defendants And Entering Dismissal With Prejudice As To The Toyo Defendants, ECF No. 260.

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

Amended Final Judgment Approving Settlement Agreement Between End-Payor Plaintiffs And Sumitomo Riko And Entering Dismissal With Prejudice As To Sumitomo Riko, ECF No. 216.

Final Judgment Approving Settlement Agreement Between End-Payor Plaintiffs And The Bridgestone Defendants And Entering Dismissal With Prejudice As To The Bridgestone Defendants, ECF No. 257.

Final Judgment Approving Settlement Agreement Between End-Payor Plaintiffs And Yamashita And Entering Dismissal With Prejudice As To Yamashita Defendants, ECF No. 258.

Final Judgment Approving Settlement Agreement Between End-Payor Plaintiffs And The Toyo Defendants And Entering Dismissal With Prejudice As To The Toyo Defendants, ECF No. 260.

# **TABLE OF CONTENTS**

                                                      **Page**

QUESTION PRESENTED ............................................................................................... i

CONTROLLING OR MOST APPROPRIATE AUTHORITIES .................................... ii

TABLE OF AUTHORITIES ......................................................................................... iv

PRELIMINARY STATEMENT .....................................................................................1

ARGUMENT ...................................................................................................................2

    I.       The Releasors Are Indisputably Indirect Purchasers .............................................2

    II.      The Releasors' Other Arguments Are Frivolous .................................................5

CONCLUSION .................................................................................................................7

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Apple v. Pepper*,
   139 S. Ct. 1514 (2019) ................................................................................................ 3, 4

*Illinois Brick Co. v. Illinois*,
   431 U.S. 720 (1977) .............................................................................................. 1, 2, 3, 4

*Jewish Hosp. Ass'n of Louisville, Inc.v. Stewart Mech. Enter.*,
   628 F.2d 971 (6th Cir. 1980) ............................................................................................ 4

*In re Lithium Ion Batteries Antitrust Litig.*,
   No. 13-MD-2420 YGR, 2014 WL 309192 (N.D. Cal. Jan. 21, 2014) .............................. 2

**Other Authorities**

Order, 13 Civ. 801, Doc. No. 43, PgID 224;  ........................................................................ 2, 3

Order, 13 Civ. 801, Doc. No. 55, PgID 764 ............................................................................. 2

## PRELIMINARY STATEMENT

After years of litigation, the EPPs reached a settlement with each of the four *AVRP* Defendants for a combined total of $81.5 million. These settlements covered all claims arising from any purchase of AVRPs by end payors, including purchases of AVRPs as replacement parts from subsidiaries of Defendants — the ***exact*** claims brought by the Releasors now. This Court approved each settlement, certified each settlement class, and entered each final judgment enjoining all end payors who indirectly purchased AVRPs from Defendants, unless they opted out. Having not opted out, the Releasors are members of these settlement classes and their claims were fully resolved by — and released under — those settlements.

The Releasors do not dispute that their claims involve exactly the same type of purchase that makes someone a member of the EPP settlement classes. Nor do the Releasors claim to be distinguishable in any way from the thousands of other absent class members who, like them, indirectly purchased replacement AVRPs from Defendants' subsidiaries and are eligible for recovery under the EPP settlements. Instead, the Releasors' sole argument is that they are not part of the settlement classes because the settlement classes excluded "direct purchasers." Nothing in the EPP settlements, notices to the EPP classes, or this Court's approval orders and final judgments warrants their exclusion.

The Releasors are not — and can never be transformed into — direct purchasers. Quite simply, the Releasors did not purchase directly from an alleged antitrust violator. By their own allegations and admissions, they purchased their replacement AVRPs from a fourth tier subsidiary of an alleged antitrust violator. And as this Court has ***already*** twice ruled, this fact makes the Releasors indirect purchasers. That is why the Releasors had to invoke — and ultimately would have to prove — the "ownership and control" exception to *Illinois Brick* to try to establish antitrust standing. Direct purchasers do not ever face that hurdle.

Accordingly, far from re-litigating this Court's prior rulings, those rulings provide the basis for this Court to enforce the final judgments and injunctions entered by this Court. The Releasors' questionable assertions that they and their counsel were unaware of the EPP settlements — even if credited — cannot change this outcome. The Court should, therefore, enforce its injunctions and dismiss the Releasors' claims.

## ARGUMENT

I.   **The Releasors Are Indisputably Indirect Purchasers**

The Releasors do not dispute that their purchases of replacement AVRPs from a non-defendant subsidiary of a Defendant are the ***exact*** same purchases that are covered by the EPP settlement classes. The Releasors, however, claim to be excluded from the classes because the claims of genuine "direct purchasers" (*e.g.*, OEMs) were excluded, and the Releasors seek to represent a putative class of those genuine direct purchasers. *See* Opp. 4–10.

But this Court has already ruled that the Releasors ***themselves*** are not direct purchasers even if members of the putative class they seek to represent, like OEMs, are. In denying Defendants' motion to dismiss, this Court ruled that the Releasors were "indirect purchasers" who must rely on an exception to *Illinois Brick* to pursue claims under the Sherman Act:

> The owned or controlled exception to *Illinois Brick* **permits suits brought by indirect purchasers** when 'the direct purchaser to whom they pay the passed-on overcharge is owned or controlled by a conspirator.' *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420 YGR, 2014 WL 309192, at *9 (N.D. Cal. Jan. 21, 2014).

Order, 13 Civ. 801, Doc. No. 43, PgID 224 (emphasis added); *accord* Order, 13 Civ. 801, Doc. No. 55, PgID 764 ("In no other case in this multidistrict litigation have the plaintiffs reached exclusively beyond selling defendants to 'entit[ies] of which one of the Defendants is the ultimate parent.'" (citation omitted)).

The Releasors' opposition brief acknowledges this reality:

2

> [T]his Court stated that the 'Supreme Court expressly recognized an exception to the *Illinois Brick* rule in those situations 'where the direct purchaser is owned or controlled by its customer,' and courts have 'expanded [the exception] to include instances where the defendant owns or controls the intermediary ***that sold the goods to the indirect-purchaser plaintiff***.'

Opp. at 5 (emphasis added) (citing Order 13 Civ. 801, Doc. No. 43, PgID 224).

This Court's conclusion that the Releasors' purchase of AVRPs from a non-Defendant subsidiary is an indirect purchase is precisely the principle announced by *Illinois Brick*. There, the Supreme Court ruled that, although indirect purchasers typically lack standing to sue under the Sherman Act, if an indirect purchaser can prove sufficient ownership or control by the Defendant antitrust violator of the subsidiary from which the purchase was indirectly made, the indirect purchaser may be able to bring their federal indirect purchaser claims. But nowhere in *Illinois Brick* did the Supreme Court state that this exception changed the basic fact that the purchases were indirect. The Supreme Court simply ruled that the general bar on federal indirect purchaser actions may not apply if the indirect purchaser can prove sufficient ownership and control between the alleged antitrust violator and its subsidiary. *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 736 n.16 (1977). Even if the indirect purchaser can meet that burden to establish antitrust standing, the purchaser remains an indirect purchaser.

As Defendants explained in their motion, the Supreme Court recently reiterated the longstanding definitional rule that indirect purchasers "are two or more steps removed from the antitrust violator in a distribution chain," while direct purchasers "are the immediate buyers from the alleged antitrust violators." Mot. at 11 (quoting *Apple v. Pepper*, 139 S. Ct. 1514, 1521 (2019)). Nothing the Releasors say in their attempt to avoid *Apple*'s clear rule changes the fact that the Releasors — unlike the iPhone users who purchased apps directly from the Apple Store — did not purchase products directly from the alleged antitrust violators in this case.

3

Nor are Releasors helped by the lower court decisions they cite. *See* Opp. at 6–7. Not a single case cited holds that the indirect purchasers are somehow transformed into direct purchasers by the application of any exception to *Illinois Brick*. In each of those cases, the court held that the plaintiff could bring federal antitrust claims. These outcomes did not turn on whether the claims were labeled "direct" or "indirect." That is why the courts characterized the arguments as form over substance. Whether plaintiffs had standing to bring the claims under federal antitrust law did not turn on whether they were direct purchasers or indirect purchasers because the substantive outcome was the same.

By contrast, the question here is not whether the Releasors have standing to pursue Sherman Act claims despite being indirect purchasers. Rather, the question here is one of basic contract interpretation — the interpretation of the clear language in the settlement agreements, the releases, and the Court's order enjoining further claims by the Releasors. The simple substantive contractual question is this: are the Releasors bringing claims based on indirect purchases or direct purchases? On that substantive question, the Supreme Court in both *Illinois Brick* and in *Apple* clearly held that direct purchasers are **only** those entities that purchase directly from the alleged antitrust violators. Similarly, as the Releasors themselves acknowledge, the Sixth Circuit in *Jewish Hosp. Ass'n of Louisville, Inc. v. Stewart Mech. Enter.*, 628 F.2d 971, 975 (6th Cir. 1980) recognized that the distinction between "direct purchaser" and "indirect purchaser" remains when the ownership or control exception is invoked. *See* Opp. at 8. And of course, this Court itself has twice recognized that the Releasors are indirect purchasers.

The Releasors, who at best purchased from a subsidiary four tiers removed from an alleged antitrust violator, cannot magically morph into direct purchasers. The Releasors are indistinguishable from the rest of the EPP settlement classes, which includes all purchasers of replacement AVRPs from Defendants' subsidiaries. Accordingly, the existing injunctions barring

any continuation of these released claims should be enforced, and the Releasors' claims should be dismissed.

## II. The Releasors' Other Arguments Are Frivolous

Unable to change the fact that under the plain meaning of the EPP settlements Releasors are enjoined from pursuing their settled claims, the Releasors attempt to distract the Court through misguided, if not frivolous, arguments.

*First*, the Releasors accuse Defendants of filing this motion on the EPP docket to "hide the issue from DPPs." Opp. at 2. Indeed, during the June 5, 2019 status conference, counsel for the Releasors told the Court that he "had not seen" the motion because he was "not a party to the end payor cases." Ex. A at 28 (Hr'g Tr.). What the Releasors neglected to mention is that four of their counsel have filed notices of appearances in the EPP case. Gregory Hansel, Nathan Fink, William Caldes, and Michael Smith — each of whom co-signed the Releasors' opposition brief — have all appeared as "interested parties" in the EPP case long before this motion was filed. *See* ECF No. 50, 161, 167, 261.

In fact, Mr. Smith filed his notice of appearance in the EPP case on December 18, 2014; so for the past ***four-and-a-half years***, the Releasors' counsel have received real time notices about all aspects of these four settlements, including the final judgments and injunctions. Moreover, these counsel stood in open court alongside Defendants' and EPPs' counsel as each of the settlements was announced to the Court. Indeed, this Court has repeatedly thanked the Releasors' counsel — Mr. Hansel — for routinely taking the lead in providing status reports to the court, which included settlement charts reflecting the status of each of these settlements. Thus, when the Releasors filed their complaint on November 15, 2016, their counsel knew, or should have known, that the exact claims they were asserting on behalf of the Releasors — claims based on indirect purchases by end payors of replacement AVRPs from subsidiaries of

5

Defendants — were covered by Defendant Tokai's settlement, which was submitted for approval on the EPP docket on September 7, 2016. *See* Mot. Ex. B at ¶¶ 10, 13 (Tokai Settlement Agreement). And they knew, or should have known, that each subsequent EPP settlement in the *AVRP* case similarly covered these replacement part claims. Tellingly, the Releasors do not dispute that the EPP case is the correct forum for this motion.[1]

*Second*, the Releasors claim that "Defendants did not even seek concurrence from DPPs (the parties whose concurrence was needed)" prior to filing their motion. Opp. at 3. Prior to filing their motion, Defendants explained to the Releasors that their claims were covered by the EPP settlements and injunctions and informed them that unless they "voluntarily dismiss this action, [Defendants] will be filing a motion to enforce the Court's injunction and dismiss this case." Mot. Ex. F. Defendants were met with silence, and this motion followed.

*Third*, the Releasors make a host of meritless arguments about being excluded from the EPP settlement process. They claim that they were "not informed of and took no part in settlement negotiations" between Defendants and EPPs and never gave EPPs their "proxy" to negotiate their claims. Opp. at 2. In a footnote, the Releasors even argue that their exclusion from negotiations is a "clear violation of the Due Process right to adequate representation" and would "void the settlement." *Id.* at 9 n.6.

As experienced class action lawyers, the Releasors' counsel certainly understand that the situation they bemoan is that of being an absent putative class member; and their supposed concerns are addressed by the notice and opt out procedures. Both safeguards were, as this Court repeatedly ruled, adequately provided to all individuals who purchased AVRP replacement parts indirectly from Defendants. That counsel for Releasors — who serve as class counsel in dozens

---

[1] Importantly, the EPPs do not oppose Defendants' motion. The "end payor position" is simply that "if someone falls within the definition of a class, and they have eligible purchases, they can make a claim and participate in the settlement." Ex. A at 34 (Hr'g Tr.).

6

of cases in this MDL and elsewhere — would make such complaints is puzzling because it indicates either a lack of awareness about how class actions work or a mystifying attempt to malign the class settlement process approved by this Court in this case and every other *Auto-Parts* case.

*Finally*, the Releasors repeatedly raise the specter of antitrust violators escaping liability. *See* Opp. at 4. Yet Defendants have paid $81.5 million to resolve claims for, among other things, the indirect purchase of AVRPs as replacement parts by end payors exactly like the Releasors. This is the opposite of escaping liability.

The absence of a suit in the *AVRP* case by **actual** direct purchasers is irrelevant. This motion concerns only whether these three Releasors can individually pursue their individual end-payor claims for indirect purchases of replacement parts. If this Court grants this motion, the Releasors will not be without a remedy. Just like everyone else who purchased replacement AVRPs from subsidiaries of Defendants, they will be able to make claims against the $81.5 million settlement fund intended to compensate precisely their types of claims — exactly as EPP counsel indicated. *See* Ex. A at 34 (Hr'g Tr.).[2]

## CONCLUSION

For these reasons, and the reasons in Defendants' motion, this Court should enforce the injunctions it has entered in the EPP case and dismiss the Releasors' claims.

Respectfully submitted,

July 16, 2019

/s/ Steven A. Reiss
Steven A. Reiss
Adam C. Hemlock
David Fitzmaurice

---

[2] The Releasors also argue that, despite failing to opt out during the opt out period, the Court should nevertheless permit them to opt out now. *See* Opp 4 n.3. There is no basis to allow them to do so. But even if they were to opt out of the EPP class settlements, that would be an express acknowledgement that their claims were indirect purchaser claims, which would preclude them from continuing to represent a putative class of direct purchasers.

**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
steven.reiss@weil.com
adam.hemlock@weil.com
david.fitzmaurice@weil.com

Frederick R. Juckniess
**JUCKNIESS LAW FIRM PLC**
302 E. Liberty Street, Ste. 203
Ann Arbor, MI 48104
Telephone: (734) 707-1515
Rick@Juckniesslaw.com

*Counsel for Bridgestone Corporation and Bridgestone APM Company*

*/s/ David C. Giardina* (with consent)
David C. Giardina
Kevin Fee
**SIDLEY AUSTIN LLP**
One S. Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
dgiardina@sidley.com
kfee@sidley.com

Bradley J. Schram
**HERTZ SCHRAM PC**
1760 S. Telegraph Road, Suite 300
Bloomfield Hills, MI 48302
Telephone: (248) 335-5000
Facsimile: (248) 335-3346
bschram@hertzschram.com

*Counsel for Toyo Tire & Rubber Co., Ltd., Toyo Automotive Parts (USA), Inc., and Toyo Tire North America OE Sales LLC*

*/s/ Michael A. Rubin* (with consent)
James L. Cooper
Michael A. Rubin
Adam Pergament
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave. NW

8

Washington, DC 20001
Telephone:  (202) 942-5000
james.cooper@apks.com
michael.rubin@apks.com
adam.pergament@apks.com

Fred K. Herrmann (P49519)
Joanne G. Swanson (33594)
**KERR, RUSSELL AND WEBER, PLC**
500 Woodward Avenue
Suite 2500
Detroit, MI 48226
Telephone: (313) 961-0200
fherrmann@kerr-russell.com
jswanson@kerr-russell.com

*On behalf of Yamashita Rubber Co., Ltd. and YUSA Corporation*

*/s/ J. Clayton Everett* (with consent)
J. Clayton Everett , Jr.
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 739-3000
Facsimile: (202) 739-3001
jeverett@morganlewis.com
*On behalf of Sumitomo Riko Company, Ltd. and DTR Industries, Inc.*

9

## **CERTIFICATE OF SERVICE**

      I hereby certify that on July 16, 2019, I caused the Reply In Support of Defendants' Motion To Enforce This Court's Final Judgments to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

      */s/ Steven A. Reiss*
Steven A. Reiss
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
steven.reiss@weil.com

*Counsel for Bridgestone Corp. and Bridgestone APM Company*